**IN THE COURT OF APPEALS OF IOWA**

No. 13-1827
Filed December 24, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BROCK MCREY BURGDORF,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Warren County, Richard B. Clogg,

Judge.


        The defendant appeals from a conviction of conspiracy to manufacture

methamphetamine. **REVERSED AND REMANDED.**


        Patrick W. O'Bryan of O'Bryan Law Firm, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, Kyle Hanson, Assistant Attorney

General, John Criswell, County Attorney, and Douglas A. Eichholz, Assistant

County Attorney, for appellee.


        Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VAITHESWARAN, J.**

In this appeal from a judgment and sentence for conspiracy to manufacture methamphetamine, the primary issue is whether the State established a foundation for the admission of electronic pseudoephedrine tracking records.

## I. Background

Pseudoephedrine is the active ingredient in certain over-the-counter cold medications. *See State v. Heuser*, 661 N.W.2d 157, 164 (Iowa 2003). Pseudoephedrine also is a key ingredient in methamphetamine. *See* Iowa Code § 124.212(4)(c) (2013) (listing pseudoephedrine as a precursor to methamphetamine).

In 2005, the legislature limited the amount of pseudoephedrine a person could purchase within a twenty-four-hour period and within a thirty-day period. *See id.* § 124.213. The legislature also restricted retailers from selling more than the amounts set forth in section 124.213 and imposed notification and monitoring requirements on the retailers. *See id.* § 126.23A. Later, the legislature strengthened the monitoring requirements and authorized the Governor's Office of Drug Control Policy to create a "real-time electronic repository to monitor and control the sale of . . . products containing any detectable amount of pseudoephedrine." *See id.* §§ 124.212B(1); .101(21); *see also id.* § 124.212A. The legislature charged the office with adopting rules to administer the provision. *See id.* § 124.212B(8).

The office promulgated rules, as directed. *See* Iowa Admin. Code rs. 657–100.1 to −100.5. The rules require all pharmacies dispensing

pseudoephedrine without a prescription to participate in the electronic pseudoephedrine tracking system. *See* Iowa Admin. Code r. 657–100.3. The rules afford law enforcement officers access to the data but reaffirm the statutory delegation of control over the repository to the Governor's Office of Drug Control Policy. *See* Iowa Admin. Code rs. 657–100.1, .4(2).

According to the State, Brock Burgdorf became involved in a scheme to circumvent these laws and regulations. Under the scheme, a known methamphetamine manufacturer enlisted a team of methamphetamine users to purchase allowed quantities of pseudoephedrine in exchange for a portion of the completed drug. The State charged Burgdorf and others with conspiracy to manufacture methamphetamine. *See* Iowa Code §§ 124.401(1)(b)(7), .413.

Before trial, the prosecutor expressed an intent to introduce records obtained from the electronic pseudoephedrine tracking system, also known as the National Precursor Log Exchange System, or NPLEx. Burgdorf's attorney filed a motion in limine seeking to exclude the documents. The district court overruled the motion, reasoning the documents would likely fall within the business records exception to the rule prohibiting admission of hearsay evidence. *See* Iowa Rs. Evid. 5.801, .802.

At trial, the State began by eliciting general testimony about NPLEx records from a special agent with the Iowa Department of Public Safety. In the midst of his testimony, the State moved to amend the minutes of evidence to add a witness who would testify about specific NPLEx records pertaining to the

involvement of Burgdorf and his claimed coconspirators. The district court granted the belated motion.[1]

The State called a sergeant with the Army National Guard, who offered thirteen NPLEx exhibits as well as a fourteenth "summary" exhibit. Burgdorf's attorney strenuously objected on several grounds, including lack of foundation and hearsay. The district court overruled the objections. Following trial, a jury found Burgdorf guilty of conspiracy to manufacture methamphetamine.

Burgdorf raises several issues on appeal, one of which we find dispositive: the absence of proper authentication or foundation for admission of the NPLEx records. Certain other issues will be addressed to the extent they bear on this issue.

## II. Authentication, Foundation of NPLEx Records

Iowa Rule of Evidence 5.901 requires authentication or identification of documents as a condition precedent to admissibility. This requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Iowa R. Evid. 5.901. The rule sets forth several examples of conforming evidence, including the following:

> (1) *Testimony of witness with knowledge.* Testimony that a matter is what it is claimed to be.
>     . . . .
> (7) *Public records or reports.* Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or *a purported public record, report,*

---

[1] Burgdorf challenges the court's ruling. Because Bergdorf knew of the records from the outset, we conclude he was not prejudiced by the district court's grant of the motion. *See State v. Wells*, 522 N.W.2d 304, 307 (Iowa Ct. App. 1994) ("Prejudice does not arise simply because an amendment to the minutes is allowed. Prejudice generally looks to the existence of some legitimate surprise visited upon the defendant which undermines an aspect of the defense to the charge or renders defendant's evidence inapplicable.").

*statement, or data compilation, in any form, is from the public office where items of this nature are kept.*

Iowa R. Evid. 5.901(b) (emphasis added). Rule 5.902 enumerates certain self-authenticating documents, such as "domestic public documents under seal," certified "domestic public documents not under seal," "certified copies of public records," and "certified domestic records of regularly conducted activity." *See* Iowa R. Evid. 5.902(1), (2), (4), (11). Specifically, subsection 4 provides:

> *Certified copies of public records.* A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, *certified as correct by the custodian or other person authorized to make the certification*, by certificate complying with rule 5.902(1), (2), or (3) or complying with any Act of Congress or rule prescribed by the United States Supreme Court pursuant to statutory authority, or statutes of Iowa or any other state or territory of the United States, or rule prescribed by the Iowa Supreme Court.

Iowa R. Evid. 5.902(4). Subsection 11, pertaining to business records, requires

> a written declaration of its custodian or other qualified person . . . certifying that the record—
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
> (B) was kept in the course of the regularly conducted activity; and
> (C) was made by the regularly conducted activity as a regular practice.

Iowa R. Evid. 5.902(11). The subsection further requires advance notice of the declaration. *See* Iowa R. Evid. 5.902(11).

Burgdorf contends the NPLEx exhibits were not admitted "by anyone who may have actually entered the data from which the logs were compiled, nor by anyone who was an actual custodian of the records." In his view, these records lacked "proper authentication and foundation" generally or as business records.

A ruling on a foundation objection usually is reviewed for an abuse of discretion. *See State v. Musser*, 721 N.W.2d 734, 750 (Iowa 2006). The presence or absence of a foundation for the admission of business records is reviewed for errors of law. *State v. Reynolds*, 746 N.W.2d 837, 841 (Iowa 2008).

The State did not call anyone from the Governor's Office of Drug Control Policy to authenticate or lay a foundation for the NPLEx records. Nor did the State obtain a certification from the office stating the proffered records were what they purported to be. The two witnesses who were called admitted to lacking foundational knowledge of the NPLEx records. The special agent essentially conceded he had nothing to do with culling the NPLEx records. The sergeant acknowledged he was not a custodian of the thirteen NPLEx exhibits nor were they records he kept in the ordinary course of business. *See id.* at 842-43 (noting State failed to meet all requirements of business records exception foundation where it failed to call anyone with knowledge of how Federal Reserve reports were generated); *State v. Warick*, No. 13-1396, 2014 WL 3511875, at *1 (Iowa Ct. App. July 16, 2014) (noting foundation for NPLEx exhibits was partially established through a records custodian attestation). The sergeant also admitted the information contained in the records was input by someone other than him— "a pharmacist, a pharmacist tech, or a person trained to operate the system in various stores and pharmacies." The State failed to call a pharmacist or retailer to testify about this process or procedure. *See Warick*, 2014 WL 3511875, at *1 (noting the State called a pharmacist to testify "regarding the process and procedure by which a covered retailer obtained and recorded identification information and a signature at the point of sale and the process and procedure

by which that information was placed into the electronic repository"); *State v. Quang*, No. 12-0739, 2013 WL 4504934, at *3-4 (Iowa Ct. App. Aug. 21, 2013) (concluding the State "presented sufficient evidence to show the exhibit was what the State purported it to be" where the State offered the testimony of sixteen pharmacists). Absent compliance with these "conditions precedent," the documents were inadmissible either generally or as business records. *See* Iowa R. Evid. 5.901.

We turn to the prejudice component. *See Reynolds*, 746 N.W.2d at 843-44. This component is drawn from rule 5.103(a), which states, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Iowa R. Evid. 5.103(a). We presume prejudice and reverse unless the record affirmatively establishes otherwise. *State v. Sullivan*, 679 N.W.2d 19, 30 (Iowa 2004). The record may affirmatively establish otherwise if the properly admitted evidence is overwhelming. *See id.* at 30-31. The record also may affirmatively establish otherwise if substantially the same evidence is already in the record. *State v. Brown*, 656 N.W.2d 355, 361 (Iowa 2003).

This record does not affirmatively establish otherwise. The State heavily relied on the NPLEx records to establish a pattern of sales in furtherance of a conspiracy to manufacture methamphetamine. The pattern was not discernable from other duly-admitted evidence. While coconspirators implicated Burgdorf in the scheme, they did not replicate the precise times and amounts of pseudoephedrine purchases contained in the NPLEx records. Nor did a GPS tracking device placed on the methamphetamine manufacturer's vehicle do more

than identify possible players in the scheme and document stops outside retail establishments.

We are left with video recordings showing Burgdorf purchasing pseudoephedrine at Wal-Mart. These recordings were admitted through the special agent, over defense counsel's foundational objection. The admission of these recordings is raised as a separate assignment of error. The recordings were inadmissible without foundational testimony from a Wal-Mart representative. *See State v. Deering*, 291 N.W.2d 38, 39 (Iowa 1980) (requiring "preliminary proof that the picture projected from the film be an accurate reproduction of the event which it depicts"). Accordingly, we decline to consider the video recordings in determining whether Burgdorf was prejudiced by the admission of the NPLEx records.

We conclude the NPLEx records were not cumulative of other evidence contained in the record and the other evidence was far from overwhelming. In other words, Burgdorf's substantial rights were affected by the admission of the NPLEx records and the summary. The erroneous admission of these exhibits requires reversal.

The only remaining question is whether we reverse and remand for a new trial or whether we reverse for dismissal. The answer to this question turns on how we resolve Burgdorf's additional challenge to the sufficiency of the evidence supporting the jury's finding of guilt. If Burgdorf's challenge is successful, double-jeopardy principles would preclude retrial. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003). Accordingly, we proceed to this issue.

### III.    Sufficiency of the Evidence

"In determining whether retrial is permissible all the evidence admitted during the trial, including erroneously admitted evidence, must be considered." *Id.* at 597.   Our review is for substantial evidence.   *State v. Hennings*, 791 N.W.2d 828, 832-33 (Iowa 2010).

The jury was instructed the State would have to prove the following elements of conspiracy to manufacture methamphetamine:

> 1. Between August 7, 2010 and October 20, 2012, the Defendant agreed with one or more persons that:
>     a. One or more of them would manufacture methamphetamine; or
>     b. Attempt to manufacture methamphetamine.
> 2. The Defendant entered into the agreement with the intent to promote or facilitate the manufacture of methamphetamine.
> 3. The Defendant or his coconspirators committed an overt act.
> 4. The coconspirators were not law enforcement agents investigating the manufacture of methamphetamine or assisting law enforcement agents in the investigation when the conspiracy began.

Burgdorf contends "there was never a showing [of] an agreement to engage in the manufacture of methamphetamine by this defendant" or that he "intended to participate in the actual manufacturing of methamphetamine."

The special agent testified to the scheme of collecting pseudoephedrine following the implementation of the tracking system.  He also identified a known methamphetamine manufacturer and the manufacturer's affiliation with other individuals who purchased pseudoephedrine.   He corroborated Burgdorf's involvement with the NPLEx records and Wal-Mart video recordings as well as GPS tracking of the methamphetamine manufacturer's vehicle.  Additionally, two coconspirators testified against Burgdorf.   While the testimony of one was

severely impeached, credibility determinations are ultimately for the fact finder. *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006).

Considering the entire record, including the erroneously admitted evidence, we discern substantial evidence to support the jury's finding of guilt. Accordingly, dismissal is not warranted.

## IV.    *Disposition*

The erroneous admission of the NPLEx records requires reversal and remand for a new trial.

**REVERSED AND REMANDED.**