**IN THE COURT OF APPEALS OF IOWA**

No. 14-1806
Filed November 25, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**LARRY DALE HOMMER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Warren County, Martha L. Mertz, Judge.

Larry Dale Hommer appeals his convictions for conspiracy to manufacture more than five grams of methamphetamine and conspiracy to deliver more than five grams of methamphetamine. **AFFIRMED.**

Joey T. Hoover of Hoover Law Firm, P.L.L.C., Winterset, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

Larry Dale Hommer appeals his convictions for conspiracy to manufacture more than five grams of methamphetamine and conspiracy to deliver more than five grams of methamphetamine, in violation of Iowa Code section 124.401(1)(b)(7) (2011). He contends there is insufficient corroboration of his coconspirators' testimony and insufficient evidence to support his convictions. He also challenges the admission of evidence he alleges is exempt from the public records exception to the hearsay rule. Finally, he contends his trial counsel provided ineffective assistance regarding his prior conviction for conspiracy to manufacture methamphetamine.

We conclude there is sufficient evidence to corroborate the testimony of two of Hommer's accomplices, and this testimony along with other record evidence is sufficient to support Hommer's convictions. We further conclude the challenged evidence was admissible under the business records exception to the hearsay rule. Because the record before us is insufficient to allow us to determine Hommer's ineffective-assistance-of-counsel claims, we preserve them for possible postconviction-relief proceedings.

## I. Background Facts and Proceedings.

A conspiracy to manufacture and deliver methamphetamine in Warren County first came to light in 2012, after law enforcement obtained data from the National Precursor Log Exchange (NPLEx). The NPLEx tracks purchases of products containing pseudoephedrine, an ingredient used in the manufacture of methamphetamine. An analysis of the NPLEx data revealed that the "top pseudoephedrine buyer" in Warren County was Randy Crow.

Randy Crow and his brother, Rodney Crow, own neighboring cabins in an area referred to as "Crow Park." Law enforcement conducted a two-week surveillance of Crow Park and noticed a pattern of visitors. The license plate numbers of those visitors' vehicles were used to obtain the visitors' names, which were then checked against the NPLEx records. A pattern of purchases made by these individuals indicated they were using a technique called "smurfing," in which many people gather pseudoephedrine pills in small quantities to manufacture methamphetamine. Based on that information, law enforcement obtained and executed search warrants on a number of Crow Park locations. Randy and Rodney Crow were arrested along with their brother, Brent Crow, and Regina Vaught-Rudich.

Hommer was one of the individuals identified as a frequent visitor to Crow Park. Investigators observed Hommer arriving at Crow Park the morning after those purchasing pseudoephedrine had come and gone. A GPS tracking device was placed on Hommer's vehicle as part of the investigation. The tracking device data shows that Hommer's vehicle was driven to the Walmart store in Oskaloosa on September 29, 2012. The NPLEx records show Brock Burgdorf purchased pseudoephedrine on that date. Surveillance video shows Burgdorf exiting Hommer's vehicle, entering Walmart, and purchasing pseudoephedrine.

Investigators reviewed Burgdorf's pseudoephedrine purchases and discovered a pattern of purchases with four other individuals. Burgdorf and those four individuals were arrested as part of the conspiracy to manufacture and deliver methamphetamine. Law enforcement eventually arrested eight others in connection with the conspiracy, including Velda Crosby and Rhonda Dawson.

The NPLEx records show those identified as being involved in the conspiracy purchased pseudoephedrine 650 times between July 2010 and August 2012.

Hommer was arrested in connection with the conspiracy on October 15, 2012. After his arrest, pseudoephedrine purchases from all but two of the identified coconspirators stopped. Crosby, one of the two coconspirators who made a purchase after Hommer's arrest, testified she did so to help exculpate Hommer.

Before trial, Hommer filed a motion in limine to exclude the NPLEx records. He argued they were public records and investigatory reports, and therefore, the records were inadmissible as hearsay under Iowa Rule of Evidence 5.803(8)(B). He also objected to the records' admission at trial. The trial court ruled the records were admissible under the business record exception to the hearsay rule.

The State called four of Hommer's accomplices to testify at trial: Randy Crow, Rodney Crow, Dawson, and Crosby. Randy Crow testified that Hommer had asked him to purchase Sudafed to manufacture methamphetamine in order to support their drug habits. In return, Hommer gave Randy approximately one gram of methamphetamine per box of Sudafed. Randy purchased Sudafed every ten days as allowed by law. During the course of the conspiracy, he purchased Sudafed a total of sixty-nine times and gave the Sudafed directly to Hommer on all but three occasions. On those three occasions, Randy gave the pills to his brother, Brent Crow, who knew how to manufacture methamphetamine and did so with Hommer. Randy also collected Sudafed from others who purchased it as part of the conspiracy. He gave the pills to Hommer

or Brent Crow and, in turn, delivered each person their share of the manufactured methamphetamine after receiving it from Hommer.

Rodney Crow testified that Brent Crow asked him to purchase pseudoephedrine pills and to collect them from other people in order to manufacture methamphetamine. Rodney recruited Dawson and others to purchase the pills every ten days. Although Brent usually arrived to collect the pills alone, Hommer came with him on occasion. Rodney then gave the pills to Brent with the expectation that he would be compensated with methamphetamine the next day. Although Brent usually provided Rodney with the methamphetamine, Rodney testified that Hommer did so on at least one occasion.

Dawson testified she initially provided pseudoephedrine to Robert Vaught in exchange for methamphetamine but did not know where the methamphetamine came from. Later, she gave the pills to Rodney Crow, who at some point informed Dawson he was giving the pills to Brent Crow. Although Dawson provided the pills directly to Brent a couple times, she never provided them directly to Hommer. Dawson did not know Hommer well, but she knew Hommer and Brent were friends and saw them hanging out together a couple of times.

Crosby testified she became friends with Hommer and used methamphetamine with him. Hommer asked Crosby to purchase pseudoephedrine—specifically, Sudafed—and provided her with the money to buy it, which she did every ten days. Because Crosby did not have a vehicle, Hommer sometimes drove her to purchase it. She also rode along with Hommer

when he went to gather pills from other people and witnessed Hommer give Burgdorf money to purchase pseudoephedrine. Crosby enlisted friends who used methamphetamine to purchase pseudoephedrine, which was then given to Hommer in exchange for methamphetamine. Crosby received approximately three-quarters of a gram of methamphetamine in exchange for purchasing pseudoephedrine, but she testified that sometimes it was less because, as Hommer told Crosby, "it didn't make as much." After Crosby provided Hommer with the pseudoephedrine, Hommer would put the pills into a small black box with a magnet on the back and secure it inside the wheel well of his vehicle. Crosby testified that she heard what sounded like Hommer running the pills through a grinder in his bedroom. She also observed that Brent Crow would come to Hommer's home every ten days and the two would leave the home together after midnight.

At the close of the State's evidence and again at the close of trial, Hommer moved for judgment of acquittal based primarily on the lack of evidence corroborating the accomplice testimony. Without that testimony, Hommer argued, there was insufficient evidence to support a conviction on either charge. The trial court denied both motions.

The jury found Hommer guilty of conspiracy to manufacture more than five grams of methamphetamine and conspiracy to deliver more than five grams of methamphetamine. Hommer filed a motion in arrest of judgment, alleging there lacked evidence corroborating the accomplice testimony and that without the accomplice testimony there was insufficient evidence to convict him. He also filed a motion for new trial, urging the trial court erred in admitting the NPLEx

records into evidence. Both motions were denied, and Hommer was sentenced to a term of not more than twenty-five years in prison.

## II. Accomplice Testimony.

On appeal, Hommer again challenges the sufficiency of the evidence corroborating the accomplice testimony presented at trial. Specifically, he argues the district court erred in denying his motions for judgment of acquittal and his motion in arrest of judgment because the testimony of Randy Crow, Rodney Crow, Dawson, and Crosby was not corroborated by evidence tying him to the conspiracy.

Iowa Rule of Criminal Procedure 2.21(3) provides that a conviction may not be had on the testimony of an accomplice unless that testimony is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The purpose of this rule is twofold: "First, it independently tends to connect defendant to the crime. Second, it supports the credibility of an accomplice whose motives are clearly suspect because of the accomplice's self-interest in focusing blame on the defendant." *State v. Brown*, 397 N.W.2d 689, 694 (Iowa 1986).

While the corroborating evidence need not be strong or confirm each material fact testified to by the accomplice, it must corroborate some material aspect of the accomplice's testimony and tend to connect the defendant with the offense. *Id.* at 694-95; *State v. Hutchinson*, 341 N.W.2d 33, 37 (Iowa 1983). "[C]orroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." Iowa R. Crim. P. 2.21(3). The testimony of one

accomplice is also insufficient to corroborate the testimony of another accomplice. *State v. Barnes*, 791 N.W.2d 817, 824 (Iowa 2010).

The existence of corroborative evidence is a question of law to be determined by the trial court. *Hutchinson*, 341 N.W.2d at 37. The sufficiency of that evidence is a question of fact to be determined by the jury. *Id.* We review a challenge to the court's determination of the existence of corroborative evidence for correction of errors at law. *State v. Bugely*, 562 N.W.2d 173, 176 (Iowa 1997). In so doing, we view the evidence in the light most favorable to the State and indulge in every legitimate inference that may be fairly and reasonably deduced from it. *Id.*

There is no question here that Randy Crow, Rodney Crow, Dawson, and Crosby are accomplices. The State admits as much, and the four were charged with commission of the same crime. The question is whether their testimony is corroborated by other evidence connecting Hommer to the crime.

Randy Crow's testimony was corroborated by NPLEx data and surveillance evidence showing Hommer visited Crow Park at regular intervals immediately following the dates pseudoephedrine was purchased by those involved with the conspiracy. Randy's testimony that Hommer drove him to Walmart to purchase pseudoephedrine is also corroborated. Surveillance video of the Walmart in Indianola shows Hommer's vehicle pulling up to the door and Randy exiting the vehicle at 4:27 p.m. on August 15, 2012. At 4:29 p.m., the video shows Randy purchasing Sudafed. The purchase is confirmed in the NPLEx records. The surveillance video then shows Randy exit the store and get

back into Hommer's vehicle at 4:35 p.m. This evidence connects Hommer to the crimes by showing he took action to further the conspiracy.

Similar evidence corroborates Crosby's testimony. Crosby testified she witnessed Hommer give Burgdorf money to purchase pseudoephedrine and was with Hommer when Burgdorf purchased pseudoephedrine. Surveillance evidence shows Hommer's vehicle was at the Walmart in Oskaloosa at 5:48 p.m. on September 29, 2012. Video surveillance shows Burgdorf exiting Hommer's vehicle and purchasing pseudoephedrine, which is confirmed by NPLEx records. Again, this evidence corroborates Hommer's participation in the crimes by showing Hommer took action to further the conspiracy.

There is also evidence to corroborate part of Rodney Crow's and Dawson's testimony. For instance, the NPLEx records corroborate their claims about the other individuals who were involved in purchasing pseudoephedrine for the conspiracy. However, very little of their testimony relates to Hommer or his role in the conspiracy.[1] Rodney's testimony that Hommer provided him with methamphetamine at least one time tentatively connects Hommer to the conspiracy, but there is no independent evidence to corroborate it. Dawson did not provide testimony to adequately connect Hommer to the conspiracy. Therefore, neither the testimony of Rodney Crow nor Dawson is corroborated.

---

[1] With regard to Hommer, Rodney Crow testified only to the following: he had known Hommer since third grade, he knew Hommer to drive a white Dodge SUV, and he received methamphetamine directly from Hommer at least once. Dawson's testimony mainly concerned Brent Crow, with whom she had a relationship. With regard to Hommer, she testified: she had seen Brent and Hommer hang out a couple times, she didn't know Hommer "that well," she knew Hommer and Brent had been friends since they were in school, she had seen Hommer in a silver Durango, and she had used methamphetamine with Hommer on two occasions.

Corroboration of accomplice testimony is not necessary if "the conviction could have been sustained without the testimony of the accomplice." *State v. Hobbs*, 107 N.W.2d 238, 242 (Iowa 1961); *see also State v. Huntington*, 80 N.W.2d 744, 746 (Iowa 1957) (holding accomplice testimony is admissible and requires no corroboration to be considered as evidence that the crime was committed by someone). The testimony of Rodney Crow and Dawson provided the jury with an overview of the size and scope of the conspiracy, as well as how it worked,[2] but very little from their testimony relates to Hommer or his involvement in the conspiracy. Because the testimony of Rodney Crow and Dawson is not evidence upon which a jury could convict Hommer of either conspiracy to manufacture or conspiracy to deliver methamphetamine, corroborative evidence was not required under rule 2.21(3).

Because there is sufficient evidence to corroborate the testimony of Randy Crow and Crosby, and corroboration is not needed for the testimony of Rodney

---

[2] From our review of the evidence, it appears the conspiracy had three tiers. At the bottom were Dawson and Crosby, as well as others who obtained pseudoephedrine to be used in the manufacture of methamphetamine and, in exchange, received a portion of the methamphetamine manufactured from it. In the middle were Randy and Rodney Crow, who not only purchased pseudoephedrine but also acted as intermediaries by collecting the pseudoephedrine from the bottom tier individuals and delivering it to those manufacturing the methamphetamine. Once the methamphetamine was manufactured, they received the finished product and delivered each individual purchaser their share of the methamphetamine. At the top of the operation were Hommer and Brent Crow, who manufactured the methamphetamine.

It also appears the operation was divided into two branches. Randy Crow functioned as an intermediary between half of those obtaining pseudoephedrine and Hommer, while Rodney Crow acted as an intermediate between the other half and Brent Crow. While there was occasional exchanging of duties between Hommer and Brent Crow, presumably when one was unavailable, it appears there was little interaction by one half with the other. As a result, the evidence of Hommer's involvement comes primarily from Randy Crow and Crosby, who worked on Hommer's side of the operation.

Rodney Crow and Dawson worked on Brent Crow's side of the operation and had limited knowledge of, or interaction with, Hommer. Their testimony alone is insufficient to convict Hommer; instead, it shows how the conspiracy operated as a whole.

Crow and Dawson, we affirm the denial of Hommer's motions for judgment of acquittal and motion in arrest of judgment.

## III. Sufficiency of the Evidence.

Hommer also contends there is insufficient evidence to support his convictions. We review this claim for a correction of errors at law. *State v. Sandford*, 814 N.W.2d 611, 615 (Iowa 2012). We consider all the evidence in the record in the light most favorable to the State. *Id.* If there is substantial record evidence to support the verdict, we uphold it. *Id.* Evidence is substantial if it can convince a rational jury the defendant is guilty beyond a reasonable doubt. *Id.* We recognize the jury is free to reject certain evidence and credit other evidence. *Id.*

Hommer was convicted of conspiracy to manufacture methamphetamine and conspiracy to deliver methamphetamine. Because conspiracies are clandestine affairs by nature, there is rarely direct evidence of an agreement to form a conspiracy. *See State v. Kern*, 831 N.W.2d 149, 159 (Iowa 2013). Therefore, circumstantial evidence and the inferences drawn from it may support a conviction on a conspiracy charge. *Id.* However, circumstantial evidence of an agreement must be based on more than suspicion. *Id.*

### A. Conspiracy to Manufacture.

In order to convict Hommer of conspiracy to manufacture methamphetamine, the State was required to show the following:

> 1. Between August 2010 and October 15, 2012, the Defendant agreed with one or more other persons that:
> a. One or more of them would manufacture methamphetamine; or
> b. Attempt to manufacture methamphetamine.

2. The Defendant entered into the agreement with the intent to promote or facilitate the manufacture of methamphetamine.

3. The Defendant or one or more other persons committed an overt act.

4. None of these other people were law enforcement agents investigating the manufacturing of methamphetamine or assisting law enforcement agents when the conspiracy began.

Hommer challenges the evidence of an agreement and the evidence of manufacturing.

A jury could reasonably find an agreement existed between Hommer and the other members of the conspiracy. Randy Crow and Crosby testified they provided pseudoephedrine directly to Hommer and, in exchange, received directly from Hommer an amount of methamphetamine manufactured from it. In addition, the evidence shows Hommer drove Randy Crow to Walmart, where he purchased pseudoephedrine before getting back into Hommer's vehicle. Hommer also gave Burgdorf money to purchase pseudoephedrine and drove him to Walmart to make the purchase. Coupled with the patterns of pseudoephedrine purchases and Hommer's appearance at Crow Park the day after the pseudoephedrine was collected, there is substantial evidence Hommer entered into an agreement to manufacture methamphetamine and had the intent to do so.

Hommer argues there is no evidence of manufacturing because he was never found in possession of methamphetamine or any of its precursors. Both Randy Crow and Crosby testified they received methamphetamine directly from Hommer. Crosby testified that after receiving pseudoephedrine from Randy Crow, she heard Hommer grind the pills in his bedroom. He would then leave with Brent Crow for an hour or two in the middle of the night. The following day,

Hommer provided Randy Crow with methamphetamine to compensate him and others for purchasing the pseudoephedrine. Crosby testified that when the amount of methamphetamine received was smaller than normal, Hommer explained "it didn't make as much." Viewing the foregoing in the light most favorable to the State, we conclude there is substantial evidence to support Hommer's conviction of conspiracy to manufacture more than five grams of methamphetamine.

**B. Conspiracy to Deliver.**

Hommer also contends there is insufficient evidence by which a jury could find him guilty of conspiracy to deliver more than five grams of methamphetamine. In order to secure a conviction for conspiracy to deliver methamphetamine, the State was required to prove the following:

> 1. Between August 2010 and October 15, 2012, the Defendant agreed with one or more other persons that:
> a. One or more of them would deliver methamphetamine; or
> b. Attempt to deliver methamphetamine.
> 2. The Defendant entered into the agreement with the intent to promote or facilitate the delivery of methamphetamine.
> 3. The Defendant or one or more other people committed an overt act.
> 4. None of these other people were law enforcement agents investigating the manufacture of methamphetamine or assisting law enforcement agents in the investigation when the conspiracy began.

There is ample evidence by which a reasonable jury could find Hommer guilty of conspiracy to deliver more than five grams of methamphetamine. Randy Crow and Crosby testified that Hommer provided them with methamphetamine on multiple occasions. In addition, Hommer provided Randy Crow with methamphetamine that he was to deliver to others in exchange for providing

pseudoephedrine. The methamphetamine was measured and in individual baggies for delivery with each person's initials marked on the bag.

Because there is sufficient evidence to support Hommer's convictions, we affirm the denial of his motions for judgment of acquittal and motion in arrest of judgment.

## IV. Admissibility of the Evidence.

Hommer challenged the admission of the NPLEx records in a motion in limine, arguing the records are an investigative report for law enforcement and therefore exempt from the hearsay exception for public records provided in Iowa Rule of Evidence 5.803(8). He raised the issue again in a motion for new trial and now advances this argument on appeal.[3]

We review a hearsay ruling for the correction of errors at law. *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014). If hearsay evidence was admitted, we will reverse because the admission of hearsay evidence is considered prejudicial unless the contrary is shown. *Id.*

A pharmacy is required by both federal and state law to obtain identification information and a signature from anyone purchasing pseudoephedrine. *See* 21 U.S.C. § 830(e)(1)(A)(iv); Iowa Code § 124.212A(2), (3), (4). In addition, the purchaser's name and address, the date and time of purchase, and the name of the pseudoephedrine product purchased and quantity

---

[3] In his motion for new trial, Hommer asserted the court erred in admitting the NPLEx records as *business records*, asserting instead that they were investigative reports "as law enforcement tools" and were thereby excluded from the *public records* exception under rule 5.803(8)(b)(i)-(iv). In a companion case, *State v. Burgdorf*, 861 N.W.2d 273, 276-78 (Iowa 2014), the issue on appeal was whether sufficient foundation had been laid for the district court to admit the NPLEx records as *business records*. We found there was not, and reversed and remanded for new trial.

sold must be recorded in the electronic logbook. *See* 21 U.S.C. § 830(e)(1)(A)(iii); Iowa Code § 124.212A(5).

The trial court found the NPLEx records fall under the business record exception to the hearsay rule. This exception applies to

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and the regular practice of that business activity was to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with rule 5.902(11), rule 5.902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Iowa R. Evid. 5.803(6). Here, the records are maintained by a business—in this case, a pharmacy. The NPLEx records the event of a person purchasing a pseudoephedrine product and are made at the time of the event by a person with knowledge of the event. Finally, these records are kept in the course of regularly conducted business activity, as required by law. Therefore, the NPLEx records fall within the definition of a business record set forth in rule 5.803(6).

Hommer argues the NPLEx records more appropriately fall under the public records exception set forth in rule 5.803(8). Specifically, he contends the NPLEx records are inadmissible as exempt public records under rule 5.803(8)(B). In order to qualify as a public record under this rule, the evidence in question must be "records, reports, statements, or data compilations of a public office or agency." Iowa R. Evid. 5.803(8)(A). While the records may be released to law enforcement as set forth in Iowa Administrative Code rule 657-100.4(124), they are not compiled by law enforcement or any public office or agency.

Because the records do not fall under the definition set forth in rule 5.803(8)(A), they cannot fall under the exemptions set forth in rule 5.803(8)(B) as Hommer argues.

Because the NPLEx records are admissible under the business records exception to the hearsay rule, we affirm the trial court's evidentiary ruling admitting the records into evidence.

### V.      Ineffective Assistance of Counsel.

Finally, Hommer contends he received ineffective assistance of trial counsel. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that as a matter of law, trial counsel failed to perform an essential duty and prejudice resulted. *State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004). We will affirm a conviction if the record is adequate for us to determine the defendant is unable to establish both a breach of duty and prejudice. *Id.* In order to prevail on the prejudice prong of this test, a defendant "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Hommer's ineffective-assistance claims are based upon his counsel's handling of evidence of a prior conviction for conspiracy to manufacture methamphetamine. Specifically, Hommer argues counsel was ineffective by allowing and discussing evidence of his prior conviction for conspiracy to manufacture methamphetamine. He also argues counsel was ineffective by failing to request the jury be instructed that his prior conviction for possession of methamphetamine could only be used to determine his credibility as a witness.

The State argues Hommer is unable to show counsel breached an essential duty regarding the evidence of his prior conviction because counsel made a strategic decision to discuss Hommer's past. The State further argues it is "possible" counsel chose not to emphasize the prior convictions by requesting the jury be given a limiting instruction.

Our supreme court has often stated its preference for reserving questions of ineffective assistance of counsel for postconviction-relief proceedings to allow trial counsel to defend against the charge. *See, e.g.*, *State v. McNeal*, 867 N.W.2d 91, 105 (Iowa 2015). "This is especially appropriate when the challenged actions concern trial strategy or tactics counsel could explain if a record were fully developed to address those issues." *Id.* at 105-06. We will only resolve such claims on direct appeal in the rare event the trial record alone is sufficient to allow us to determine the merits of the claim. *Id.* at 106. Because the record before us is inadequate to reach the merits of Hommer's claims of ineffective assistance, we preserve them for possible postconviction-relief proceedings.

**AFFIRMED.**