# IN THE COURT OF APPEALS OF IOWA

No. 18-1176
Filed February 5, 2020

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JD RAY ANDERSON,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Julie A. Schumacher, Judge.

JD Anderson appeals his conviction for domestic abuse assault, third offense. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., Mullins, J., and Gamble, S.J.* Schumacher, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

JD Anderson appeals his conviction for domestic abuse assault, third offense. He argues the district court erred by admitting a 911 recording and corresponding transcript into evidence. He also alleges he received ineffective assistance of counsel. We affirm.

**I. Facts and Prior Proceedings**

Anderson and J.H. met in their teens. After J.H. moved with her family, the two lost touch. Over two decades later, Anderson and J.H. reconnected over Facebook. Eventually, J.H. moved in with Anderson, and they began an intimate relationship. But their intimate relationship ended a few months later. They continued to reside together as roommates and agreed they would find separate residences.

Before they moved out of their shared residence, Anderson and J.H. met up at a local bar. The two left on foot for their residence, separately, but around the same time. They were within shouting distance of each other and argued on the walk home. Once back at the residence Anderson and J.H. continued to argue. Anderson struck J.H. several times.

Jamica Jackson was an upstairs neighbor. Jackson's boyfriend woke her up due to commotion in the downstairs apartment. Jackson went down to the back window to listen. She heard a smothered cry for help. Jackson went back upstairs, got dressed, and went back down to the front door of the apartment. Jackson knocked on the door. Anderson answered the door. Jackson observed J.H. bruised, bloody, and crying. Jackson walked in and took J.H. by the hand, directing J.H. to come with her.

Jackson led J.H. to her residence, and J.H. asked Jackson to get her dogs. Jackson returned to Anderson's residence to recover the pets and then went back to her home. Jackson then called 911 to report the incident. Police arrived and arrested Anderson.

Anderson was charged with domestic abuse assault causing bodily injury—third offense. Anderson filed a motion in limine to exclude the 911 call from trial, arguing it qualified as inadmissible hearsay. The court reserved ruling on the motion. The matter proceeded to jury trial. When the State sought to admit the 911 call, defense counsel objected "pursuant to [the] motion in limine." The court overruled the objection and admitted the 911 call into evidence.[1]

The jury found Anderson guilty of domestic abuse assault—third offense, a lesser included offense to domestic abuse assault causing bodily injury—third offense.

Anderson appeals challenging the admission of the 911 call and corresponding transcript and alleges he received ineffective assistance of counsel.

**II. Standard of Review**

We review the district court's hearsay rulings for correction of errors at law. *State v. Reynolds*, 746 N.W.2d 837, 841 (Iowa 2008). We review ineffective-assistance claims de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

---

[1] The district also admitted the transcript of the 911 call over Anderson's objection.

## III. Discussion

### A. Ineffective Assistance of Counsel[2]

Anderson brings three independent claims of ineffective assistance and also argues the cumulative effect of the alleged deficiencies requires relief. Generally, ineffective-assistance claims are preserved for postconviction relief so the record can be fully developed. *Id.* But when the record is adequate, the claim may be resolved on direct appeal. *Id.*

To succeed on an ineffective-assistance claim, a defendant must demonstrate counsel failed to perform an essential duty and constitutional prejudice resulted. *State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019). "Because the test for ineffective assistance of counsel is a two-pronged test, a defendant must show both prongs have been met." *Nguyen v. State*, 878 N.W.2d 744, 754 (Iowa 2016). If a defendant cannot prove either prong, we need not address the other. *See id.*

First, Anderson argues counsel was ineffective for failing to object to the inclusion of lesser-included-offenses in the jury instructions. He does not argue the submitted lesser-included offenses fail to satisfy the impossibility test and were improperly admitted. *See State v. Miller*, 841 N.W.2d 583, 588 (Iowa 2014)

---

[2] We recognize Iowa Code section 814.7 was recently amended to provide in pertinent part: "An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief" and "shall not be decided on direct appeal from the criminal proceedings." *See* 2019 Iowa Acts ch. 140, § 31. In *State v. Macke*, however, our supreme court held the amendment "appl[ies] only prospectively and do[es] not apply to cases pending on July 1, 2019." 933 N.W.2d 226, 235 (Iowa 2019). We are bound by our supreme court's holding. We conclude, therefore, the amendment "do[es] not apply" to this case, which was pending on July 1, 2019. *Id.*

(providing an offense qualifies as a lesser-included offense if it satisfies the impossibility test). Rather, he faults counsel for failing to object to the inclusion of instructions for any lesser-included offense. But the district court is required to submit lesser-included offenses to the jury when applicable. Iowa R. Crim. P. 2.6(3); *see also State v. Jeffries*, 430 N.W.2d 728, 737 (Iowa 1988).

Anderson recognizes *Jeffries* compels the inclusion of lesser-included offenses under the strict statutory-elements approach. *See* 430 N.W.2d at 737. He argues counsel was ineffective by (1) failing to recognize a Missouri case described Iowa's approach in *Jeffries* is a minority approach among states and (2) failing to advocate for *Jeffries* to be overturned to preserve error on appeal. *See State v. Jackson*, 433 S.W.3d 390, 419–20 (Mo. 2014) (Stith, J., writing separately) (recognizing Iowa follows the minority approach of automatically including lesser-included-offense instructions). But as the State highlights, there is nothing in Iowa's jurisprudence since *Jeffries* was decided to undermine it or question its continued validity. In fact, our supreme court reaffirmed the strict statutory-elements test of *Jeffries* in *Miller*, 841 N.W.2d at 588.[3] We conclude counsel was not ineffective for failing to object to the obligatory inclusion of lesser-included-offense instructions because *Jeffries* remains good law. *See State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015) ("Counsel, of course, does not provide ineffective assistance if the underlying claim is meritless.").

---

[3] To the extent Anderson asks this court to overturn *Jeffries*, we cannot. *See State v. Beck*, 845 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent.").

Second, Anderson argues counsel was ineffective for failing to object to a jury instruction that provided: "Evidence has been offered to show that the defendant made statements at an earlier time and place. If you find any of the statements were made, then you may consider them as part of the evidence, just as if they had been made at this trial." But "[t]his court has repeatedly rejected the same challenge to the same instruction." *See State v. Lustgraaf*, No. 18-0167, 2019 WL 1055838, at *1 (Iowa Ct. App. Mar. 6, 2019) (collecting cases); *accord State v. Chrzan*, No.18-1327, 2019 WL 5067174, at *3 (Iowa Ct. App. Oct. 9, 2019) (collecting cases). Accordingly, counsel was not ineffective for failing to object to a correct statement of the law. *Halverson*, 857 N.W.2d at 635.

Third, Anderson claims the 911 call and corresponding transcript would not have been admitted had counsel brought a foundational objection to the 911 call under the "records of regularly conducted activity" exception to the hearsay rule. *See* Iowa R. Evid. 5.803(6). He argues foundation for the 911 call should have been established through someone with knowledge of how and when the recording was created.[4] *See* Iowa R. Evid. 5.901; *State v. Burgdorf*, 861 N.W.2d 273, 276–77 (Iowa Ct. App. 2014). The record does not provide insight as to why counsel did not object to foundation. But counsel should be given an opportunity to provide an explanation. *See State v. Coleman*, 907 N.W.2d 124, 142 (Iowa 2018) (recognizing counsel's conduct may have been a strategic decision and counsel should have an opportunity to respond to the defendant's allegations). So we preserve it for possible postconviction proceedings. *See State v. Harris*, 919

---

[4] The State introduced the 911 call during Jackson's testimony.

N.W.2d 753, 754 (Iowa 2018) ("If the record is insufficient to allow for a review on direct appeal, we do not reach the issue on direct appeal and allow the defendant to raise the claim in a separate postconviction-relief action.").

Finally, Anderson argues the cumulative prejudice of his claims warrants relief. "[I]f a claimant raises multiple claims of ineffective assistance of counsel, the cumulative prejudice from those individual claims should be properly assessed under the prejudice prong." *State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012). Because we find counsel was not ineffective in two instances and preserved Anderson's third claim, we necessarily find he did not suffer cumulative prejudice.

**B. Admission of 911 Recording and Transcript**

Anderson claims the district court erred in admitting the 911 recording and corresponding transcript because they contain hearsay. Hearsay is an out-of-court statement made for the truth of the matter asserted. Iowa R. Evid. 5.801(c). Hearsay is inadmissible unless an exception applies. Iowa R. Evid. 5.802; *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). So we must determine if the 911 call is hearsay and whether an exception to the hearsay rule applies.

We find Jackson's statements to the operator during the call qualify under two hearsay exceptions. First, the statements qualify under the present-sense-impression exception. *See* Iowa R. Evid. 5.803(1). This exception applies to "statement[s] describing or explaining an event or condition made while or immediately after the declarant perceived it." Anderson argues Jackson's statement "[l]ooks like [J.H's] husband just beat her up" cannot qualify as a present sense impression because Jackson did not observe Anderson beat up J.H. However, in context, Jackson's statement, "[l]ooks like her husband just beat her

up," describes the event or condition Jackson perceived while she was perceiving it. Jackson described the man she identified as JD Anderson as J.H.'s "husband." Jackson also said J.H. "lives down below me." "He's downstairs. She's upstairs. I just went down and got her." Jackson described J.H's condition, "[S]he can't talk. Her mouth and her eyes and everything are swollen up so bad . . . and she's got blood on her shirt and everything." Jackson also said, "There's blood in her hair, there's blood on her shirt and her sleeves." Jackson's statement described only what she observed. J.H. looked like her husband beat her up. The remainder of Jackson's statements related to the details of J.H.'s appearance and the events that unfolded as she investigated the shouting coming from Anderson and J.H.'s residence. The 911 call was made shortly after Jackson brought J.H. into her residence and as she observed J.H. Therefore, we find it occurred close enough in time to amount to a present sense impression. *See State v. Clemens,* No.17-1944, 2019 WL 719021, at *2 (Iowa Ct. App. Feb. 20, 2019) (upholding the admission of 911 call under the present-sense-impression exception to the hearsay rule).

We also find Jackson's statements to the operator were admissible under the excited-utterance exception.[5] This exception applies to "statement[s] relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Iowa R. Evid. 5.803(2). When determining if a statement qualifies as an excited utterance, we consider:

---

[5] The State did not advance this argument in the district court, but we may affirm evidentiary rulings on any basis, including those not addressed below. *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002).

(1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999).

Jackson's statements were made shortly after rescuing J.H. Jackson's statements that J.H. looked like her husband beat her up, that J.H. could not talk because her lips and eyes were swollen, and that she had blood in her hair and on her shirt were unprompted by the operator. The events of the evening were startling, Jackson heard a loud disturbance and someone call for help late in the evening. When she investigated, she found J.H. injured, crying, and covered in blood. She brought J.H. to her residence and relative safety. We find the necessary conditions met to classify Jackson's statements to the 911 operator as an excited utterance. *See State v. Sykes*, No. 18-1564, 2019 WL 5424945, at *3 (Iowa Ct. App. Oct. 23, 2019) (finding no legal error in the district court's conclusion that statements made in a 911 call were excepted from the rule against hearsay as present-sense impressions and excited utterances under Iowa Rules of Evidence 5.803(1) and (2)).

With respect to the transcript of the 911 call, we find it is duplicative of the 911 call because it contains the same statements. Since the 911 call was admissible under the present sense-impression and excited-utterance exceptions to the hearsay rule, the transcript of the 911 call is admissible as well. *See Bennett v. State*, No. 03-1397, 2004 WL 1812822, at *3 (Iowa Ct. App. Aug. 11, 2004) ("Because the underlying statements as well as the 911 call itself falls under hearsay exceptions, the radio log, tape recording, and transcript of the call were

all properly admitted."). Even if the transcript amounts to hearsay, its inclusion in the record did not prejudice Anderson. *See State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006) ("[E]rroneously admitted hearsay will not be considered prejudicial if substantially the same evidence is properly in the record.").

## IV. Conclusion

Two of Anderson's ineffective-assistance claims are without merit. We preserve his third ineffective-assistance claim so that the record can be further developed. He suffered no cumulative prejudice because counsel did not perform deficiently on the two claims addressed in this appeal. The district court properly admitted Jackson's statements during the 911 under the present-sense-impression and excited-utterance exceptions to the hearsay rule. The 911 call transcript was duplicative of the 911 call. For these reasons, we affirm.

**AFFIRMED.**