# IN THE SUPREME COURT OF IOWA

No. 87 / 06-0344

Filed April 4, 2008

**STATE OF IOWA,**

Appellee,

vs.

**BRIAN EDWARD REYNOLDS,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Muscatine County, Nancy S. Tabor, Judge.

Appellant contends the district court erred in admitting hearsay evidence, and claims trial counsel provided ineffective assistance. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED, AND CASE REMANDED.**

Mark C. Smith, State Appellate Defender, Greta A. Truman, Civil Commitment Unit, and Jason B. Shaw, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Gary Allison, County Attorney, and Kerrie L. Snyder, Assistant County Attorney, for appellee.

**HECHT, Justice.**

Brian Reynolds seeks further review of an Iowa Court of Appeals decision affirming his convictions for one count of theft in the first degree and six counts of forgery. The court of appeals concluded the district court properly admitted certain hearsay evidence under the business records hearsay exception, Iowa Rule of Evidence 5.803(6). The decision of the court of appeals also rejected Reynolds's claim that defense counsel was ineffective in failing to raise Confrontation Clause objections to some of the hearsay evidence. We vacate the decision of the court of appeals, reverse Reynolds's convictions, and remand for a new trial.

## I.     Factual and Procedural Background.

At approximately 9:00 a.m. on December 17, 2004, Brian Reynolds entered a U.S. Bank branch in Muscatine and attempted to cash six United States postal money orders in the amount of $950 each. Paige Bales, a sales and service manager at U.S. Bank, recognized Reynolds as a customer of the bank, knew he was employed as a mechanic, and was instantly suspicious of the proposed transaction. Although the money orders appeared valid, Bales told Reynolds she would have to put "a hold" on them because there was a possibility they might be fraudulent, and she wanted to protect him and the bank by making sure they had value.[1] Reynolds reluctantly agreed, and decided to deposit the proceeds of the money orders in his bank account. Approximately one hour later, after finding another bank that would cash the money orders immediately, Reynolds called Bales and asked her to reverse the transaction and return the money orders to him. Reynolds soon returned to the bank and retrieved the money orders.

---

[1]As a consequence of the "hold," Reynolds would not receive cash for the money orders until the transaction cleared.

Approximately twenty minutes after retrieving the money orders from U.S. Bank, Reynolds entered Central State Bank in Muscatine and presented teller Julie Kissell with two United States postal money orders, each in the amount of $950. At Reynolds's request, Kissell cashed them, applied $400 of the proceeds to a vehicle loan in the name of C. Geertz, and handed to Reynolds the remaining $1500 in cash. Later the same day, Reynolds returned to the same bank with four more United States postal money orders, each in the amount of $950. Teller Brannan Murphy completed a transaction for Reynolds in which Reynolds paid $100 from the proceeds of each money order on a loan under the names of Reynolds and Geertz, and received the remainder in cash.

On December 30, 2004, Reynolds returned to Central State Bank with four more United States postal money orders, each in the amount of $950. Per Reynolds's request, the bank applied part of the proceeds to retire a loan balance, and gave the remainder to Reynolds in cash. On January 31, 2005, Reynolds returned to Central State Bank, this time bearing two Traveler's Express international money orders, each with a face value of $3000. Reynolds again approached teller Brannan Murphy, who cashed them.

On February 1, 2005, Stella Best, a proof operator and research officer at Central State Bank, received e-mail communications known as "error messages" from the Federal Reserve indicating the six money orders cashed on December 17, 2004, were counterfeit. On February 8, 2005, Best received similar communications from the Federal Reserve regarding the four money orders presented by Reynolds to the bank on December 30, 2004.

After Central State Bank received notification of the problems with Reynolds's postal money order transactions, Charity Harmon, the head teller at the bank, made inquiry as to the legitimacy of the two Traveler's Express international money orders. She called a Traveler's Express "800" telephone number, provided the relevant money order identification numbers, and heard a "computerized recording" reporting the money orders had no value.

The State charged Reynolds with one count of first-degree theft and six counts of forgery. Reynolds waived his right to a jury trial and a bench trial was held. At trial, the State used Best's testimony in an attempt to lay a foundation for admission of ten exhibits under the business records exception to the hearsay rule, Iowa Rule of Evidence 5.803(6). Each of these exhibits included a copy of a money order involved in one of the transactions, various documents created by Central State Bank such as a transaction ticket, and a copy of the error message from the Federal Reserve advising the bank of the counterfeit status of the subject money order. Best testified the bank routinely receives error messages via e-mail from the Federal Reserve in the course of the bank's business. She also testified the e-mail communications included in the proffered exhibits came from the Federal Reserve, and verified the dates the notices were received by the bank. Best testified that the reason each of the e-mail communications was sent by the Federal Reserve to the bank was to notify the bank of a "counterfeit postal money order." Defense counsel did not object to this testimony by Best, but later objected on hearsay grounds to the admission of copies of the e-mail communications received by the bank from the Federal Reserve. The district court admitted the ten exhibits over this objection. No one from Central State Bank or the Federal Reserve gave

testimony explaining how the Federal Reserve error reports are generated and sent.

Defense counsel also lodged, and the district court overruled, a hearsay objection to Harmon's testimony relating the information she learned from the Traveler's Express "800" number. Harmon testified that the Traveler's Express "computerized recording" informed her that the international money orders cashed by Reynolds on January 31, 2005, were without value. No one from Central State Bank or Traveler's Express gave testimony explaining how the data reported by the "computerized recording" is generated.

The district court found Reynolds guilty on all seven counts and committed him to the custody of the department of corrections for a period not to exceed ten years on count one, and for a period not to exceed five years on counts two through seven, to be served concurrently. Reynolds's appeal was transferred to the court of appeals. That court affirmed the district court's ruling admitting the Federal Reserve error reports and Harmon's testimony under the business records exception, Iowa Rule of Evidence 5.803(6). The court of appeals also denied Reynolds's ineffective-assistance-of-counsel claims and affirmed his convictions.[2]

## II. Scope of Review.

We review a defendant's hearsay claims for correction of errors at law. *State v. Musser,* 721 N.W.2d 734, 751 (Iowa 2006).

---

[2]The court of appeals declined to address the issues raised in Reynolds's pro se supplemental brief because it was not filed within fifteen days after appellate counsel filed the proof brief. *See* Iowa R. App. P. 6.13(2). For the same reason, we do not address Reynolds's pro se arguments.

**III.    Discussion.**

**A.    Business Records Exception to the Hearsay Rule.**  A party seeking to admit a record containing hearsay into evidence under Iowa Rule of Evidence 5.803(6) must establish the following foundational elements:

1)    That it is a business record;

2)    That it was made at or near the time of an act;

3)    That it was made by, or from information transmitted by, a person with knowledge;

4)    That it was kept in the course of a regularly conducted business activity;

5)    That it was the regular practice of that business activity to make such a business record.

*Beachel v. Long*, 420 N.W.2d 482, 484 (Iowa Ct. App. 1988) (citing 5A Iowa Rules of Civil Procedure Annotated 581 (1984)).  Reynolds contends the testimony provided by the State's witnesses as to the Federal Reserve error reports and computerized recording from Traveler's Express was insufficient as to the third foundational requirement—that the record was made by, or from information transmitted by, a person with knowledge.  We agree.

1.    *Federal Reserve error reports.*  The State attempted to lay a business records exception foundation for the ten exhibits containing the Federal Reserve error reports through the testimony of Stella Best, a proof operator and research officer at Central State Bank.  Each of the exhibits contained six separate documents.  Best testified the first four documents in each exhibit were generated by Central State Bank.  The last two documents in each exhibit, however, were an e-mail and error report created by the Federal Reserve and sent to Central State Bank, declaring that each of the ten money orders cashed by Reynolds was counterfeit.

Defense counsel objected to the admission of the last two pages in each exhibit on hearsay grounds. The prosecutor responded:

> . . . I believe that Ms. Best has established the first parts of the transactional paperwork as generated by Central State Bank. Those are documents she commonly deals with in the proof department as they have to go through that department for verification. In regard to the actual money order, those are presented to the bank.
>
> She testified they are presented to Central State Bank. Copies are maintained within their system within the normal course of business. The records of the copy – the subsequent copy of the money order, the e-mail notification and the error reports are received by them in the normal course of business from the Federal Reserve to notify them if there was an error.
>
> She testified that there was an error and what the error consisted of. She also testified that they commonly rely on that in the normal course of their business. Although the record is generated by the Federal Reserve, it is received by Central State Bank in the normal course of their business. It's something on which they commonly rely and once received, they maintain it within the normal course of their business, so for that reason the State feels that the hearsay objection should be overruled.

While the prosecutor arguably addressed four of the five rule 5.803(6) foundation elements in her response to Reynolds's hearsay objection, she failed to address the requirement that the relevant records—the e-mails and error messages created by the Federal Reserve—were made by a person with knowledge, or from information transmitted by a person with knowledge.

Best's testimony established Central State Bank "received" the documents from the Federal Reserve and "maintained" them in the normal course of Central State Bank's business. Rule 5.803(6), however, requires that the record be *made* by, or from information transmitted by, a person with knowledge. The hearsay objection raises an issue of "double hearsay," as the Federal Reserve generated the error report, not Central State Bank, and Best did not testify that she had any knowledge as to how the error

reports themselves were made. *See Union Story Trust & Sav. Bank v. Sayer*, 332 N.W.2d 316, 320–21 (Iowa 1983) (holding a party failed to lay a proper business records exception foundation for hearsay evidence under Iowa Code section 622.28 where party failed to demonstrate that the record sought to be introduced was the business record *of that party*); *State v. Lain*, 246 N.W.2d 238, 242 (Iowa 1976) (holding a telephone subscriber was unable to lay a business records exception foundation for telephone bill because the subscriber had no knowledge of the method or circumstances of the creation of the record); *Polson v. Meredith Publ'g Co.*, 213 N.W.2d 520, 525 (Iowa 1973) (stating that admitting third-party hearsay statements contained in a business record without a separate hearsay exception foundation for the third-party hearsay "would constitute a complete departure from the most elementary rules of evidence rather than obedience to the statutory admonition that such rules should be liberally applied"); *In re Herron*, 212 N.W.2d 474, 476 (Iowa 1973) (noting the statutory counterpart to rule 5.803(6), Iowa Code section 622.28, "does not eliminate proof of the reliability" of hearsay records contained within records generated by the business). These cases establish that a party must establish the applicability of an exception to the hearsay rule authorizing the admission of third-party hearsay statements contained in a business record. The fact that third-party hearsay is contained in an otherwise-admissible business record does not cleanse it of the "untrustworthy" hearsay taint. *Sayer*, 332 N.W.2d at 320–21. While it is essential that the record be kept in the course of regularly conducted business activity, that fact alone is not dispositive; the record must also satisfy the other rule 5.803(6) conditions to establish admissibility of the hearsay statements in the record.

Here, there is no testimony from anyone with knowledge of how the Federal Reserve error reports were generated. From the testimony of Stella Best, it appears Central State Bank employees were unable to, or at least did not, independently determine that the money orders were counterfeit; the bank relied exclusively on the Federal Reserve to make that determination. There is no evidence in the record either as to how the Federal Reserve determined the money orders were counterfeit, or how the error reports were made. Although the specific person who created the record in the course of business need not testify to lay the foundation for the business records exception, *see State v. Propps,* 376 N.W.2d 619, 621 (Iowa 1985), the party offering the evidence must demonstrate the evidence was made in the course of the Federal Reserve's business, at or reasonably near the time, using standard procedures that reasonably indicate the trustworthiness of the information.

We acknowledge the possibility the Federal Reserve records were created through a fully automated and reliable process involving no human declarant. If this is the case, the "statements" contained in the records are arguably not hearsay at all, as they would not have been made by a human declarant. *See State v. Armstead*, 432 So. 2d 837, 839 n.2 (La. 1983) (discussing the distinction between computer-stored (hearsay) and computer-generated (non-hearsay) data); *State v. Carter,* 762 So. 2d 662 (La. Ct. App. 2000); *State v. Dunn,* 7 S.W.3d 427, 430–32 (Mo. Ct. App. 1999) (holding telephone records were not hearsay where testimony of telephone company security manager established the records were created by a fully electronic process); *State v. Hall,* 976 S.W.2d 121, 147 (Tenn. 1998) (noting computer-generated records are not hearsay, and their admissibility is measured by the reliability of the system). But we simply cannot know this

on the record of this case, as there is no evidence in the record from any person with knowledge as to how the Federal Reserve error reports were created or as to the reliability of the error reporting system in general. As the Tennessee Supreme Court held in *Hall,* the foundational testimony for non-hearsay evidence need only be provided by a person with "special knowledge about the operation of the computer system." *Hall,* 976 S.W.2d at 147; *see also Dunn,* 7 S.W.3d at 432 (holding testimony of a Southwestern Bell employee was sufficient to establish the reliability of records from AT&T). Best's testimony was insufficient to satisfy the State's burden to establish that the statements in the e-mails and error reports from the Federal Reserve were made either "by a person with knowledge," or by a reliable, non-hearsay, computer-generated source. The district court therefore erred in admitting the Federal Reserve error messages.

Under Iowa Rule of Evidence 5.103(*a*), we presume prejudice arises from nonconstitutional error and reverse unless the record affirmatively establishes otherwise. *State v. Sullivan,* 679 N.W.2d 19, 30 (Iowa 2004). Here, although defense counsel objected to admission of the inadmissible hearsay contained in the exhibits, he did not object to Best's earlier testimony declaring the postal money orders were counterfeit. Because Best's testimony was already in the record when the exhibits were offered and received in evidence, the error messages themselves were cumulative on the issue of the counterfeit status of the money orders. *State v. McGuire,* 572 N.W.2d 545, 547–48 (Iowa 1997) (noting the court will not find prejudice in the admission of hearsay evidence if "substantially the same evidence has come into the record without objection"). We therefore

conclude the district court's erroneous admission of the Federal Reserve error reports did not result in reversible error.[3]

2. *Harmon's testimony based on the Traveler's Express recording.* Reynolds contends Harmon's testimony regarding the statements she heard when she called the Traveler's Express "800" number was improperly admitted over his hearsay objection, and requests a reversal of his conviction on count seven, one of the forgery counts. The State asserts the district court properly admitted the testimony under the business records exception. For several reasons, we conclude the district court erred in admitting this evidence. First, Harmon's testimony is insufficient to establish whether the information provided to the bank was computer-stored hearsay or computer-generated non-hearsay. Harmon testified as to how she accessed by telephone the Traveler's Express information, but there is no evidence in the record as to how Traveler's Express acquired and produced the data it provided to her. The record does not disclose whether Traveler's Express generated the information communicated on the recording through a passive, mechanical process, or whether it was generated through human perception and judgment. *Cf. Dunn*, 7 S.W.3d at 430–32 (reciting testimony of telephone company employee detailing how all long distance carriers receive and maintain billing records from other carriers and noting the process is entirely electronic with no direct human input).

Second, if we assume the statement Harmon heard when she called the Traveler's Express "800" number was hearsay, Harmon's testimony recounting it in court was not a business record. To fall within the rule 5.803(6) exception to the hearsay rule, the evidence must be "a

---

[3]However, because we conclude below that Reynolds received ineffective assistance of counsel, his convictions must nonetheless be reversed.

memorandum, report, record, or data compilation, in any form . . . made at or near the time . . . ." While the record may be "in any form," oral statements related to the court by someone engaged in business do not fall within the purview of the exception. Simply put, Harmon's testimony based on her memory of what she heard when she called Traveler's Express is not a "business record." Moreover, Harmon's in-court testimony also clearly failed to satisfy the exception's "made at or near the time" requirement. Iowa R. Evid. 5.803(6). Because it was not a record made at or near the time, Harmon's testimony does not bear the indicia of reliability upon which the business records hearsay exception is grounded. *Propps*, 376 N.W.2d at 620–21. Accordingly, the trial court erred in admitting Harmon's hearsay testimony as to what she heard when she called the Traveler's Express "800" number.

Our prejudice analysis regarding the admission of Harmon's testimony as to the information supplied telephonically by Traveler's Express differs from our prejudice analysis with respect to the admission of the Federal Reserve error reports. There is no other evidence in the record tending to prove the Traveler's Express money orders were counterfeit, other than Harmon's hearsay account of what she heard when she called Traveler's Express. With no admissible evidence that the Traveler's Express money orders were counterfeit, the State could not prove Reynolds uttered an international money order he knew to be forged. *See* Iowa Code § 715A.2(*c*). On this record, the presumption of prejudice with respect to these money orders has not been rebutted, and we therefore reverse the defendant's conviction on count 7, and grant him a new trial on that charge.

**B.** **Ineffective Assistance of Counsel.** Reynolds raises two grounds of ineffective assistance of trial counsel: (1) failure to object to Best's hearsay testimony regarding the contents of the Federal Reserve error reports; and (2) failure to object to the testimony of both Best and Harmon based on the Sixth Amendment right of confrontation. A defendant claiming ineffective assistance of counsel has the burden to show "(1) the attorney failed to perform an essential duty and (2) prejudice resulted." *State v. Shanahan*, 712 N.W.2d 121, 136 (Iowa 2006) (quoting *Bowman v. State*, 710 N.W.2d 200, 203 (Iowa 2006)). To establish prejudice, the defendant must show "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *State v. Hopkins*, 576 N.W.2d 374, 378 (Iowa 1998); *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984)).

1.  *Failure to raise a hearsay objection.* We usually reserve ineffective-assistance-of-counsel claims for postconviction proceedings, but we will resolve such a claim on direct appeal "when the record adequately presents the issues." *State v. Thornton*, 498 N.W.2d 670, 675 (Iowa 1993). The record must be sufficient for the court to determine both ineffectiveness and the resulting prejudice. We conclude the record here is adequate to determine whether the result of the trial would have been different if defense counsel had objected to the hearsay evidence. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.

To establish prejudice, a defendant must show the probability of a different result is "sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698. "In determining whether this standard has been met, we must consider the totality of the evidence,

what factual findings would have been affected by counsel's errors, and whether the effect was pervasive or isolated and trivial." *State v. Graves*, 668 N.W.2d 860, 882–83 (Iowa 2003) (citing *Strickland*, 466 U.S. at 695–96, 104 S. Ct. at 2069, 80 L. Ed. 2d at 698). Unlike the situation in which error has been preserved and the court presumes prejudice, *see Sullivan*, 679 N.W.2d at 30, in this case it is the defendant's burden to demonstrate a reasonable probability of a different result. *Shanahan*, 712 N.W.2d at 136.

We conclude Reynolds did suffer prejudice as a consequence of his trial counsel's failure to object to Best's hearsay testimony. As we have noted, the Federal Reserve error messages—the only other evidence offered by the State to establish the counterfeit status of the postal money orders—were inadmissible. This left only Best's testimony supporting a finding the postal money orders were counterfeit. If Reynolds's trial counsel had raised the meritorious hearsay objection to Best's testimony, there would have been insufficient evidence in the record for the court to find Reynolds guilty of the six forgery charges and the related theft charge. Accordingly, we conclude Reynolds has established a reasonable probability that the result of the trial would have been different but for his trial counsel's breach of duty. *See State v. Miller*, 590 N.W.2d 724, 725 (Iowa 1999) (noting *Strickland* prejudice is established if there is a reasonable probability that but for counsel's failure, the result of the trial would have been different). We therefore reverse Reynolds's conviction on all seven counts and remand for a new trial.[4]

---

[4]Reynolds was convicted of theft in the first degree (count one) and six counts of forgery (counts two through seven). The theft count was based upon the total value of the allegedly forged postal and Traveler's Express money orders. Because the forgery convictions must be reversed as a consequence of the ineffectiveness of Reynolds's trial counsel, the theft charge based upon the same inadmissible evidence must also be reversed.

2.      *Failure to raise Confrontation Clause objections.*  As we have concluded Reynolds is entitled to a new trial on all charges, we need not address his claim trial counsel was ineffective for failing to object to the hearsay testimony on Confrontation Clause grounds.

**IV.     Conclusion.**

We reverse all of the convictions on the ground Reynolds received ineffective assistance of counsel, and remand for a new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED, AND CASE REMANDED.**