# IN THE COURT OF APPEALS OF IOWA

No. 15-1231
Filed February 8, 2017

**PETER KELLY LONG,**
 Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
 Respondent-Appellee.
_____

Appeal from the Iowa District Court for Webster County, Gary L. McMinimee, Judge.


Applicant appeals the district court's denial of his application for postconviction relief.  **AFFIRMED.**


John J. Bishop, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee State.


Considered by Danilson, C.J., Vaitheswaran, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**BLANE, Senior Judge.**

Applicant Peter Kelly Long appeals the district court's denial of his postconviction-relief (PCR) application, which claimed his trial attorney was ineffective. Long asserted that his counsel was ineffective for waiving a jury for the enhancement phase of his criminal trial and failing to timely raise the lack of statutory specificity of the predicate conviction. Long also claims his enhanced sentence constitutes cruel and unusual punishment.[1] For the reasons discussed below, we now affirm the district court.

## I.      Procedural Background.

In 1996, Long was charged with sexual abuse in the third degree in both Webster and Hamilton Counties. Based upon plea negotiations, he pled guilty in each county to one count of lascivious acts with a child, in violation of Iowa Code section 709.8 (1993), and was sentenced to consecutive five-year terms of imprisonment. The record did not specify which of the subsections in 709.8 applied to each of Long's pleas.

In 2010, a trial information was filed in Webster County charging Long with sexual abuse in the third degree, in violation of sections 709.1(3) and 709.4(2)(b), with a second or subsequent offense enhancement under section 902.14 based upon the 1996 convictions for lascivious acts with a child. A jury convicted Long of the charge of sexual abuse in the third degree and the trial

---

[1] In his PCR application, Long raised a number of issues. Long's PCR counsel only argued the first issue in appellant's brief. Long argues other issues in his pro se briefs. Those not addressed here either were previously decided on direct appeal, not argued in briefs before this court (and thus waived), or were not properly preserved for our review. *See* Iowa R. App. P. 6.903(2)(g)(3); *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

proceeded directly to the enhancement phase. Long and his trial counsel waived a jury and this phase was tried to the court. The State presented its evidence, which identified Long as the same defendant who was convicted of the lascivious-acts crimes in 1996. The evidence included a 2010 video interview between Long and law enforcement during which he discussed his prior conduct that led to his 1996 convictions and judgment entries for lascivious acts with a child. The State then rested. Long's counsel then moved for a judgment of acquittal.

Long's motion focused on a technical argument. To be subject to the section 902.14 enhancement—a life sentence—Long had to have been previously convicted of an offense identified in that code section. To qualify, the prior conviction under section 709.8 had to fall under either subsection (1) ("Fondle or touch the pubes or genitals of a child") or (2) ("Permit or cause a child to fondle or touch the person's genitals or pubes"); the remaining subsections are not listed in section 902.14 and do not qualify for enhancement. The evidence, particularly the 1996 judgment entries, did not specify the subsection of section 709.8 of which Long was convicted in 1996. Long's counsel thus argued that the State had not established that Long had previously been convicted of a necessary predicate felony to trigger the 902.14 enhancement. The trial judge took the motion under advisement.

In response to this argument, the State moved to reopen the record of the enhancement phase. Long's counsel resisted, citing *State v. Teeters*, 487 N.W.2d 346 (Iowa 1992). *Teeters* identifies seven factors that a district court is to consider before exercising its discretion to reopen the record. 487 N.W.2d at

348. Those seven factors are: (1) the reason for the failure to introduce the evidence; (2) the surprise or unfair prejudice inuring to the opponent that might be caused by introducing the evidence; (3) the diligence used by the proponent to secure the evidence in a timely fashion; (4) the admissibility and materiality of the evidence; (5) the stage of the trial when the motion is made; (6) the time and effort expended upon the trial; and (7) the inconvenience reopening the case would cause to the proceeding.  *Id.*  After a hearing, the trial judge entered a lengthy ruling which analyzed *Teeters*'s seven factors, granted the State's motion, and reopened the record.  The State then filed a supplemental witness list and minutes of testimony.  The State presented evidence from the court reporter who reported the 1996 guilty pleas and the transcripts of those pleas.  In the transcripts, Long admitted to having direct physical contact with the genitals of a minor under the age of twelve years.  The trial judge found the State established that Long previously violated section 709.8(1) and met the statutory predicate to be subject to the section 902.14 enhancement as a second or subsequent offender.  Long was then sentenced to life in prison.

Long filed a direct appeal of his conviction and sentence, arguing the trial judge erred in granting the State's motion to reopen the record under the *Teeters* analysis.  Long's appeal was transferred to the Iowa Court of Appeals.  Our court reversed the district court, holding that it abused its discretion in allowing the State to reopen the record, which unfairly undermined Long's trial counsel's strategy.  *See State v. Long*, No. 11-0197, 2011 WL 6740164, at *7 (Iowa Ct. App. Dec. 21, 2011).  The State sought further review, which the Iowa Supreme Court granted.  On further review, the supreme court determined the trial court

did not abuse its discretion in reopening the record, affirmed the district court's judgment, and vacated the court of appeals opinion. *See State v. Long*, 814 N.W.2d 572, 584 (Iowa 2012).

Long then filed this PCR application on October 25, 2012. On March 22, 2013, Long filed an amended PCR application, and on February 23, 2015, he filed a supplemental PCR application. Following a hearing, the district court denied Long's PCR application. This appeal followed.

**II.      Standard of Review.**

Ineffective-assistance-of-counsel claims in PCR actions are reviewed de novo as they involve both federal and state constitutional issues. *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016).

**III.     Discussion.**

**A. Ineffective assistance of counsel in waiver of jury.**

Because the Iowa Supreme Court found the trial court properly exercised its discretion in granting the State's motion to reopen the record, Long now argues that his trial counsel was ineffective by convincing him to waive the jury for the enhancement phase. Long contends that this waiver was a critical error that allowed the State to reopen its case.

Long's argument is that it made no sense to waive a jury because his trial attorney was going to raise the lack of specificity as to the particular code subsection in the 1996 judgments in a motion for judgment of acquittal to the judge. It would be the trial judge who would address the motion, whether it was a jury trial or bench trial. Long focuses on the last criterion set out in *Teeters*—the inconvenience reopening the case would cause to the proceeding. He contends

his attorney was ineffective in convincing him to waive the jury because if a jury was deciding the enhancement phase, the trial judge would have found reopening the evidence would inconvenience the jury where it did not inconvenience the judge. Long concludes if there had been a jury, the record would not have been reopened and the State would not have proved the enhancement. For several reasons, we cannot agree with Long's contention.

To succeed on a claim of ineffective assistance of counsel, a claimant must establish by a preponderance of the evidence his trial counsel (1) failed to perform an essential duty, and (2) this failure resulted in prejudice. *State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015); *accord Strickland v. Washington,* 466 U.S. 668, 687 (1984). The other legal standards applicable to PCR are thoroughly summarized in *Tompkins* and will be applied, though not repeated, here. *See Tompkins*, 859 N.W.2d at 637-38.

The record supports a finding that Long and his trial attorney discussed the strategy of waiving the jury before the enhancement phase. As his attorney explained, and Long understood, the motion for judgment of acquittal was a technical legal argument best understood by the judge. In addition, the State presented ample evidence that Long was the same person previously convicted of lascivious acts with a child in 1996.

Long's argument rests on Iowa Rule of Criminal Procedure 2.19(9), which sets forth the procedure to be followed before imposing sentencing enhancements based on prior convictions. The relevant portion provides,

> If the offender denies being the person previously convicted, sentence shall be postponed for such time as to permit a *trial before a jury on the issue of the offender's identity with the person*

> *previously convicted. Other objections shall be heard and determined by the court, and these other objections shall be asserted prior to trial of the substantive offense in the manner presented in rule 2.11.*

Iowa R. Crim. P. 2.19(9) (emphasis added). Long insists that his trial counsel should have known this rule required—even if there was a jury—that the trial judge would address the motion for judgment of acquittal. As this rule makes clear, the only issue for a jury in the enhancement phase is whether the defendant is the same person previously convicted. Other objections are to be heard and determined by the court.

The issue raised here is whether the waiver of the jury caused Long to lose his objection to the State reopening the record. As noted, the trial court applied *Teeters*. The supreme court reviewed the trial court's *Teeters* analysis in *Long*, 814 N.W.2d at 574-75, affirming the trial court. The court is to *balance* all seven factors; no one factor is controlling or tips the scale. *See id.* (noting the district court balanced all seven factors); *State v. Jefferson*, 545 N.W.2d 248, 250 (Iowa 1996) (cautioning against overemphasizing one factor).

First, we find that under the *Teeters* analysis, even if Long had not waived a jury, the trial court would have still granted the State's motion to reopen the record. Weighing all seven factors, as the trial court did and as found by the supreme court on appeal, it would have been appropriate under *Teeters* to grant the motion and reopen the evidence even with a jury.

Further, with regard to the inconvenience factor, we find the above-cited rule answers the inquiry. Even if Long and his trial attorney did not waive a jury, the motion for judgment of acquittal would still have been decided by the judge.

The jury could have decided its sole issue—whether Long was the person previously convicted of lascivious acts—and been discharged while the judge retained the legal issue raised by the motion for judgment of acquittal—whether the prior convictions triggered Iowa Code section 902.14. The trial judge, even with a jury, could have left the record open for presentation of evidence on the legal motion that was solely for the court's determination as provided by rule 2.19(9) (i.e., "other objections"). Further, under the rule, the court may use the same jury or impanel a new jury at a later time to determine the identity issue. Either way, Long was not prejudiced by his trial counsel's strategy of waiving a jury for the enhancement phase.

Our supreme court also looked at this issue on Long's direct appeal. It discussed the evidence presented at the enhancement stage *before* the judge reopened the record:

> In addition to the certified copies of the convictions, the State played a videotape where Long discussed his previous convictions with Detective Bahr. *The videotape was introduced prior to the State resting.* Long stated that he was convicted in 1996 for an incident that occurred involving a young girl who "was riding on a motorcycle and I reached back and was touching her and things like that." The conduct Long admits to in the videotape would only fall under subsection 709.8(1), fondling the pubes or genitals of a child. It does not describe any of the other conduct listed in subsections 709.8(2) through (4). In response to Long's motion for a judgment of acquittal, the district court noted that based on Long's comments on the videotape, and the certified copies of the convictions that had been submitted to the court, the State had probably met its burden of proof.

*Long*, 814 N.W.2d at 579 (emphasis added) (citations omitted). The district court had sufficient evidence to overrule Long's motion for judgment of acquittal even before granting the State's motion to reopen the record. There is no reasonable

probability that Long would have obtained a different result but for his counsel's alleged ineffective assistance. Again, Long suffered no prejudice from his counsel's recommendation to waive the jury at the enhancement stage.

### B. Timeliness.

Long argues pro se that because his trial counsel did not comply with rule 2.19(9) by filing an appropriate motion before the enhancement phase to challenge the fact that the 1996 convictions did not specify whether they were violations of subsections (1) or (2) of section 709.8 so as to trigger 902.14, he lost his opportunity to raise this issue. Despite the fact that his attorney did not raise the lack of subsection specificity pre-enhancement stage and waited until after the State had presented its evidence in the enhancement phase, the trial court did not deny or overrule Long's motion for judgment of acquittal as untimely under the rule. Rather, as the record shows, the trial judge considered the evidence presented both before and after the motion to reopen the record, and found the predicate convictions were established to impose enhancement under section 902.14, thus implicitly overruling Long's acquittal motion.

In addition, based upon the State's evidence, even if Long's trial counsel had timely filed a motion challenging the lack of subsection specificity, it would have been denied. To establish prejudice, a claimant must demonstrate "'there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Reynolds*, 746 N.W.2d 837, 845 (Iowa 2008) (citation omitted). Here, there is no question the result of filing a timely motion would not have been different. Thus, Long suffered no prejudice by trial counsel's actions.

**C. Cruel and unusual punishment.**

Long claims his life sentence required by Iowa Code section 902.14 constitutes cruel and unusual punishment prohibited by the Eighth Amendment of the United States Constitution and article I, section 17 of the Iowa Constitution. This court conducts a de novo review of sentencing challenges based on constitutional protections. *State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012) (citing *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009)); *see also* Iowa R. Crim. P. 2.24(5)(a)). Long raised this argument in his pro se supplemental PCR application, specifically claiming gross disproportionality. The trial court found Long's claim lacked merit, noting that a categorical challenge to section 902.14 had been rejected by the supreme court in *Oliver*. Further, as to a gross-proportionality challenge, the PCR court found Long "offered no evidence to support such a claim."

On appeal a reviewing court must also make an independent judgment of whether the sentence violates the constitution. *Graham v. Florida*, 560 U.S. 48, 67 (2010). Gross proportionality requires application of a three-part analysis. *Bruegger*, 773 N.W.2d at 873. The court is to first determine if the penalty leads to an inference of gross disproportionality, and if it does, then it must proceed to steps two and three of the analysis—the intrajurisdictional and interjurisdictional comparisons. *Id.* Part of this analysis must determine "whether the challenged sentencing practice serves legitimate penological goals." *Graham*, 560 U.S. at 67. "A sentence lacking any legitimate penological justification is by its nature disproportionate to the offense." *Id.* at 71. The United States Supreme Court

has recognized four legitimate penological justifications: retribution, deterrence, incapacitation, and rehabilitation. *Id.*

In conjunction with Long's constitutional challenge, he raises two preliminary complaints. First, he complains that because the sentencing court did not order a presentence investigation report, this deprived that court with information necessary to determine whether the life sentence under section 902.14 was grossly disproportionate. However, as the PCR court properly found, once the determination was made that section 902.14[2] applied, Iowa Code section 901.2 prohibited its preparation: "The court shall not order a presentence investigation when the offense is a class 'A' felony."

Second, Long contends that his 1996 convictions for lascivious acts with a child were class "D" felonies, carrying only five-year sentences. Therefore, he argues under *Oliver* these convictions do not qualify as predicate felonies because the supreme court referenced only class "B" (twenty-five years) and class "C" (ten years) felonies as qualifying for enhancement to life sentences under section 902.14. Long concludes that because his predicate felonies were only class "D," enhancement to life without parole is grossly disproportionate and unconstitutional.

Long's argument fails for two reasons. First, even though Long's earlier convictions for lascivious acts with a child were class "D" felonies in 1996, Iowa Code section 709.8 was amended in 2005 and increased the punishment for

---

[2] "A person commits a class 'A' felony if the person commits a second or subsequent offense involving any combination of" enumerated offenses, including a combination applicable to Long. Iowa Code § 902.14.

violation of subsections 709.8(1) or (2) to that of a class "C" felony. Thus, for purposes of a gross-proportionality analysis, Long's 1996 convictions may be viewed as class "C" felonies. Second, Long's argument that *Oliver* requires the predicate to be a class "B" or class "C" felony is misplaced. The supreme court stated: "Only a second violation of section . . . 709.8(1) and (2) (fondling a child or causing a child to fondle the perpetrator) will trigger section 902.14. Unenhanced, each of these offenses is a class 'B' or 'C' felony." *Oliver*, 812 N.W.2d at 647. The court specifically identifies the conduct—fondling a child or causing a child to fondle the perpetrator—that can serve as a predicate for sentencing enhancement. The court did not require the earlier conviction to be a class "B" or "C" felony; the conduct, not the designation, is the relevant consideration.

We proceed with the gross-proportionality evaluation. The first step is the threshold test, which requires a reviewing court to determine whether a defendant's sentence leads to an inference of gross disproportionality. This involves a balancing of the gravity of the crime against the severity of the sentence. *Id.* at 640. There are four guiding principles in a gross-proportionality analysis. *See id.* at 650-51. The first is that we owe substantial deference to the penalties the legislature has established for various crimes. *Id.* at 650. The second is that it is rare that a sentence will be so grossly disproportionate to the crime as to satisfy the threshold inquiry and warrant further review. *Id.* The third is that a recidivist offender is more culpable and thus more deserving of a longer sentence than a first-time offender. *Id.* Finally, features of a case can "converge to generate a high risk of potential gross disproportionality." *Id.* at 651.

As to Long's criminal conduct, his current crime is especially heinous.  He preyed upon a twelve-year-old girl who was at his house to babysit his children.  Long attempted to force his penis into the twelve-year-old victim's vagina as she told him to "get away," tried to push him off, and cried from the pain.  Long then gave the victim a glass of Pepsi to drink with "white stuff" floating in it that caused her to feel dizzy as he continued abusing her, and he later tried to suffocate her by placing a rag soaked in alcohol over her nose and mouth as she screamed.  At the hospital, the victim's urine screened positive for opiates from the white powder Long put in her drink.  A colposcopic exam revealed the victim had a complete transection of her hymen, which was consistent with a penetrative injury and would have been painful for a girl her age.  These facts demonstrate Long committed a blameworthy offense involving a minor.

Long's predicate convictions were for lascivious acts with two females under the age of twelve, which involved him fondling their genitals.  This led to Long's earlier incarceration.  As part of his sentence, Long was required to participate in the sex offender treatment program (SOTP).  Long acknowledges he participated from 1996 to 1999 and asserts he "successfully" completed SOTP.  However, his conduct leading to his recent conviction shows that Long's treatment was hardly successful.

Long has committed multiple crimes as an adult against children of tender ages, and he has shown an inability to be rehabilitated when he repeated his sexual attacks on children after three years in SOTP.  The recent crime was physically violent and emotionally, psychologically and physically damaging to the young victim. Offenses relating to a defendant's status as a sex offender are

not merely technicalities; the legislature has imposed these requirements because of the "realistic concerns related to offender recidivism" and the need to limit a recidivist's opportunities to reoffend. *See id.* at 652. A sentence of life without parole for a conviction of sexual abuse in the third degree of a child twelve years of age, when the perpetrator has two prior convictions of lascivious acts with a child that involved fondling of the children's genitals, is not cruel and unusual punishment in violation of the Eighth Amendment or our state constitution.

After reviewing Long's case and comparing the gravity of his crime to the penalty mandated by the statute, we do not feel that section 902.14 imposes an unconstitutional punishment. Long's sentence does not lead to an inference of gross disproportionality. Since the penalty does not lead to an inference of gross disproportionality, we need not proceed to steps two and three of the analysis, the intrajurisdictional and interjurisdictional comparisons. *See Bruegger,* 773 N.W.2d at 873.

Having considered Long's arguments, we find the district court's denial of his amended postconviction-relief application was proper. He suffered no prejudice from either of the acts he alleges constituted ineffective assistance. Further, his enhanced sentence of life without parole is not unconstitutional. We therefore affirm.

**AFFIRMED.**