# IN THE COURT OF APPEALS OF IOWA

---

No. 24-1500
Filed February 11, 2026

---

**State of Iowa,**
Plaintiff–Appellee,

v.

**Nathaniel Wade Marchant,**
Defendant–Appellant.

---

Appeal from the Iowa District Court for Scott County,
The Honorable Tom Reidel, Judge.

---

**AFFIRMED**

---

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, attorneys for appellee.

---

Heard at oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Sandy, J.

1

**SANDY, Judge.**

Following a jury trial, Nathaniel Marchant was convicted of one count of sexual exploitation of a minor, a class "C" felony in violation of Iowa Code § 728.12(1) (2023), one count of sexual exploitation of a minor, a class "D" felony in violation of Iowa Code § 728.12(1) (2022), and one count of invasion of privacy, an aggravated misdemeanor in violation of Iowa Code § 709.21(1) (2021).[1]

Marchant now appeals, claiming (1) the State presented insufficient evidence that he had knowledge or responsibility for hidden cameras and nude videos and images. He also claims the district court abused its discretion in (2) excluding evidence that a topless photo of the victim had been found on the victim's cellphone; (3) admitting an extraction report of Google emails referencing purported phone factory reset attempts; (4) excluding a text message exchange between the victim's mother and her paramour; and (5) admitting evidence of bookmarks to stepfather/stepdaughter-related pornographic websites. For the reasons stated below, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

Marchant first entered a relationship with the victim's mother in 2015. Although they never married, the couple had two children together, and the victim's mother had two other children, one daughter (the victim) and one son, before entering her relationship with Marchant. After a few months the couple began living together with the children.

---

[1] The counts for sexual exploitation of a minor merged at sentencing.

After Marchant moved in, he quickly became a "father figure" to the victim. However, the victim testified that their relationship began to change after she turned eleven. The victim testified that, one night in August 2021, she felt Marchant lift up her shirt while she was sleeping and saw a flash. She opened her eyes to see Marchant with his phone in his hand. This testimony was corroborated by the victim's mother, who testified that she called the police when the victim's grandmother informed her that Marchant "took a photo of [the victim's] breast while she was waking up and still partially asleep." Further, the victim's mother confronted Marchant and gave him the opportunity to prove his innocence to her by demanding he show her the contents of his phone. He declined to do so.

Following this incident, the victim moved into a bedroom across from her grandmother's bedroom. She felt that because her grandmother was a light sleeper, she would be safer from intrusions in the new bedroom. An investigation was conducted but ended without incident. Marchant tried to spend time with the victim and bought her clothing, which the victim's mother characterized as often "a little more revealing" than appropriate for a child, but the victim tried to "keep [her] distance from him" following the initial incident. After the victim had moved into her new room, Marchant installed a couple USB towers in the room to power a few strips of LED lighting along her ceiling.

The victim's mother testified that in September 2023, she surreptitiously found Marchant's old phone, a Samsung Galaxy 8, in the garage. She was surprised to find this phone had new notifications since he had a new phone, a Samsung Galaxy 10, at that time. Upon further investigation, she found nude images of a woman and began recording the images with her own phone, as she had suspected Marchant was being

unfaithful. But after scrolling further through the photos app, the victim's mother stopped recording. She realized that many of the photos were nude images of her thirteen-year-old daughter that had been taken with a hidden camera located in the victim's bedroom. The victim's mother immediately went to the victim's bedroom and found a small camera attached near the USB tower on the victim's dresser, which she then removed and brought to the victim's grandmother. Upon being confronted by the victim's mother, Marchant apologized, claiming to be "sorry" and stating that he was "going to go kill [him]self." The victim's mother later received a Facebook message from Marchant's account which stated, "The only way they're going to find my body is if they use the Find My Phone app with my old phone."

The victim's mother then called the police. Over 1,000 images of the victim "in a state of full or partial nudity" were recovered from Marchant's phones, including 164 on his new phone. The police department's forensic technician testified that 12,000 total video files were recovered. The recordings spanned in time from April to September 2023, and Marchant had purchased and/or downloaded multiple surveillance monitoring apps between 2021 and 2022.

Marchant was charged with two counts of sexual exploitation of a minor and one count of invasion of privacy in October 2023. The matter proceeded to trial in April 2024.

Marchant denied secretly recording the victim and claimed to be completely unaware of the over 1,000 nude images of the victim across his two phones. He further claimed that the Galaxy 8 had briefly gone missing before reappearing again. Marchant denied the victim's claims that he had installed the USB towers although he admitted to gluing them down. Marchant also admitted that he had installed almost a dozen other cameras

around and inside of the house but claimed that he needed the victim's help installing all the cameras and software. The victim directly denied doing so. Marchant claimed that his suicidal statements were made "sarcastically."

Following trial, the jury returned guilty verdicts on all charges. Marchant was sentenced to twenty-five years, with a seventy-percent mandatory minimum on the merged sexual-exploitation counts, and two years on the invasion-of-privacy count, with both terms to be served concurrently. Marchant now appeals his convictions.

## STANDARD OF REVIEW

We review challenges to the sufficiency of evidence for correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Our court reviews evidentiary rulings for abuse of discretion, including rulings made under the rape shield law, *State v. Montgomery*, 966 N.W.2d 641, 649 (Iowa 2021), as well as rulings relating to prior bad acts, *State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014).

## DISCUSSION

### I. Sufficiency of the Evidence

Marchant first argues "[t]he evidence was insufficient to establish that [he] had knowledge or responsibility for the hidden cameras or the nude videos and images."

We view the evidence in the record "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. We will uphold a verdict if substantial record evidence supports it." *Sanford*, 814 N.W.2d at 615 (cleaned up). We consider evidence substantial if that evidence could convince a rational fact finder of the

defendant's guilt beyond a reasonable doubt "when viewed in the light most favorable to the State." *Id.* The jury is permitted to credit certain evidence while rejecting other evidence. *Id.*

The charges of sexual exploitation of a minor required the State to prove the following:

> 1. On or about the 1st of September, 2021 through the 30th of June, 2023 [and the 1st of July, 2023 through the 7th of September, 2023], [Marchant] used, knowingly permitted, or caused a person under the age of 18 years to engage in a prohibited sexual act.

> 2. [Marchant] knew, or had reason to know, or intended that the act would be photographed, filmed, or preserved in a visual depiction.

> If the State has proved both of the elements, [Marchant] is guilty of Sexual Exploitation of Minors. If the State has failed to prove either of the elements, [Marchant] is not guilty.

The definition for a "prohibited sex act" included "[n]udity of a minor for the purposes of arousing or satisfying the sexual desires of a person who may view a visual depiction of the nude minor."

The charge of invasion of privacy—nudity required the State to prove the following:

> 1. On or about the 1st day of September 2021 through the 7th day of September 2023, [Marchant] did knowingly view, photograph, or film another person while in a state of full or partial nudity.

> 2. [Marchant] did so with the specific intent to arouse or gratify the sexual desire of any person.

> 3. The other person did not consent or was unable to consent to being viewed, photographed, or filmed.

> 4. The other person has a reasonable expectation of privacy while in a state of full or partial nudity

6

If the State has proved all of the elements, [Marchant] is guilty of Invasion of Privacy. If the State has failed to prove any one of the elements, then [Marchant] is not guilty.

To prove the first element of each of the above charges, the State sought to prove that Marchant placed hidden cameras in the victim's bedroom, used those cameras to record the victim in various states of undress, and stored those nude images on his phone. Marchant contends the evidence was insufficient to show such. But the evidence against Marchant is overwhelming.

The State presented a significant amount of incriminating testimony from the victim as well as physical evidence tying Marchant to the charged actions. Significantly, the victim testified that it was Marchant who installed the USB towers in her bedroom, ostensibly for the purpose of powering the room's LED lighting. These were the towers later found to be powering the spy camera in the bedroom. Marchant argues that because no receipts for those towers were ever recovered, and no direct evidence such as Marchant's DNA, fingerprints, or "footage of him interacting with the cameras" was ever presented, his convictions lack sufficient evidence. But "circumstantial and direct evidence are equally probative." *Godfrey v. State*, 962 N.W.2d 84, 102 (Iowa 2021). And the circumstantial evidence presented by the State was sufficient to allow the jury to draw "legitimate inference[s]" of guilt. *See id.*

The victim testified that she had never moved the USB towers, that Marchant had personally constructed a shelf in her bedroom, and that the towers were installed on that shelf. Marchant also seemed concerned that the victim may move the USB towers and eventually glued the towers to the shelf to prevent their removal if the victim rearranged the furniture in her bedroom.

The victim's mother found nude images of the victim on a phone she thought Marchant no longer possessed. She also found hidden cameras near the USB ports that Marchant had positioned and glued down in the victim's bedroom. Upon the victim's mother's discovery of the cameras and photos, Marchant apologized and promised to commit suicide. Over 1,000 images of the victim taken with the hidden cameras were recovered from Marchant's phones. Law enforcement additionally found several dozen bookmarks to pornographic stepfather/stepdaughter-themed videos on Marchant's phone web browser.

Marchant's contention that other individuals had access to his Google account and could have been responsible for the images is not compelling given the unique and overwhelming confluence of facts pointing to his guilt. Marchant obsessed over the location of the USB towers powering the hidden cameras in the victim's bedroom, previously photographed the victim's breasts while she was sleeping, possessed hundreds of nude photos of the victim, apologized for the acts, threatened to commit suicide, and had a fascination with stepfather/stepdaughter pornography.

The jury was further free to discount Marchant's implausible theories of defense, such as that the victim or grandmother or mother secretly recorded the victim and placed the images on Marchant's Google Photos account. Another theory Marchant put forth was that the victim placed the cameras in her room so that she could be alone with her boyfriend in her bedroom. No evidence was provided for this theory outside of Marchant's self-serving testimony. Sufficient evidence supports Marchant's convictions for sexual exploitation of a minor and invasion of privacy.

## II.     Exclusion of Evidence

Marchant next argues that the district court abused its discretion in "excluding evidence that a partially nude photo of [the victim] had been found on [the victim]'s cellphone."

Marchant sought to admit certain testimony from the victim's mother through an offer of proof. That testimony alleged that around the summer of 2022, Marchant found a nude image of the victim in her bedroom on the victim's phone and showed it to the victim's mother. The victim purportedly took this photo and had been "grounded" as a result. The victim's mother also testified that the victim had sent the photo to another individual.

Following the offer of proof, Marchant's attorney clarified that Marchant was only seeking to introduce the testimony that the victim possessed a nude photo of herself taken in her bedroom on her phone, and he was not seeking to introduce evidence that she had sent the nude photo to anyone. The State objected to its admission, and the district court excluded the evidence on the grounds that it violated rule 5.412 (the rape shield law) and, alternatively, that it lacked foundation and its probative value was outweighed by the danger of unfair prejudice under rule 5.403.

Under Iowa's rape shield law, "[e]vidence offered to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual predisposition" is generally not admissible in criminal proceedings. Iowa R. Evid. 5.412(a). The law is meant to "protect the victim's privacy, encourage the reporting and prosecution of sex offenses, and prevent the parties from delving into distractive, irrelevant matters." *State v. Trane*, 934 N.W.2d 447, 456–57 (Iowa 2019). But the rape shield law "does not come into play" when a defendant seeks to introduce evidence that is not sexual behavior, such as evidence that the victim posed nude, "[a]bsent a showing or implication of

sexual activity," *State v. Zaehringer*, 280 N.W.2d 416, 420 (Iowa 1979), or a precursor to sexual activity, *State v. Alberts*, 722 N.W.2d 402, 409 (Iowa 2006). "[T]o find nude posing to be 'sexual conduct' within the meaning of [the rape shield law] would be to place a strained and unreasonable construction on that [rule]." *Zaehringer*, 280 N.W.2d at 420; *but see State v. Kroll*, No. 23-0449, 2024 WL 4624605, at *6 (Iowa Ct. App. Oct. 30, 2024) (holding that the "act of sending nude pictures to men by a mobile device through social media falls within 'sexual behavior'").

Under Iowa Rule of Evidence 5.403, the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, even if we assume, without deciding, that the district court wrongly excluded evidence of the nude photo under the rape shield law, we determine that the district court properly exercised its discretion in excluding the evidence under rule 5.403.

The district court's concern that the nude-photo testimony was not relevant to Marchant's theory of defense was well founded. Its utility to the defense is not clear to us. Defense counsel claimed the photo is "relevant to show that [the victim] may have taken the pictures that the State accuses my client of taking." But as the district court aptly pointed out, "Any relevance that a picture taken in 2022 may have to these cameras and what was shown on these cameras and was shown on a phone that was not [the victim]'s is more prejudicial than it is probative." Essentially, Marchant sought to suggest that, because the victim had taken a nude photo of herself in her bedroom, it must have been taken with spy cameras in the room. But there is no other evidence in the record that supports this tenuous theory in lieu of

the most plausible explanation: the victim took a nude photo of herself with the very phone on which the nude photo was found.

In sum, even if we assume, without deciding, that the district court wrongly excluded evidence of the nude photo under the rape shield law, the district court properly exercised its discretion in excluding the evidence under rule 5.403.

## III. Hearsay Objection

Marchant contends the district court erred in admitting "evidence of Google emails referencing an attempt to factory reset [his] Galaxy 8 phone." At trial, the State sought to introduce a Cellebrite extraction report containing ten emails sent from "noreply@google.com" to "MarchantNate69@gmail.com." These emails indicated that a factory reset was attempted on Marchant's Galaxy 8 phone after the police had obtained his Galaxy 8 and Galaxy 10 phones. In his pre-trial motion in limine, Marchant sought the exclusion of these emails on the basis that they were hearsay, arguing "they presumably came from somewhere inside the Google corporation, but we don't even know if they were written by a human or generated by a robot." The court did not exclude the emails following Marchant's motion in limine. At the time the State sought to introduce the extraction report, Marchant objected "for hearsay, and particularly hearsay from an unidentified and presumably non-human declarant. This appears to be automatic responses from someone inside the Google Corporation." The district court overruled the objection and permitted the report's admission into evidence.

Hearsay is a statement made by a declarant, other than while testifying at the current trial or hearing, to prove the truth of the matter asserted. Iowa R. Evid. 5.801(c). The "declarant" is "the *person* who made the statement."

11

Iowa R. Evid. 5.801(b) (emphasis added). Records produced through a "fully automated and reliable process involving no human declarant" are "arguably not hearsay at all, as they would not have been made by a human declarant." *State v. Reynolds*, 746 N.W.2d 837, 843 (Iowa 2008). But where it is unclear whether an email or report was automated or produced by a human, there must be evidence in the record establishing how the "report[] [was] created or as to the reliability of the . . . reporting system in general." *Id.*

In this case, even if we were to determine that district court erred in overruling Marchant's objection to the admission of the no-reply emails, any such error on that objection was harmless. We addressed Marchant's insufficient-evidence claims above without considering the evidence related to the emails produced by Google. By the time Marchant purportedly attempted to wipe the Galaxy 8 phone, the damage was done. As we stated above, the evidence against Marchant is overwhelming: Marchant obsessed over the location of the USB towers powering the hidden cameras in the victim's bedroom, previously photographed the victim's breasts while she was sleeping, possessed hundreds of nude photos of the victim taken with a hidden camera in her bedroom, apologized to the victim's mother for the acts, threatened to commit suicide, and had a fascination with stepfather/stepdaughter pornography. Thus, the district court's admission of the extraction report did not result in any reversible error.

## IV.  Text Messages Between Victim's Mother and Paramour

Marchant also argues that "[t]he district court erred in precluding Marchant from placing into evidence the text messages between [the victim's mother] and her paramour." Marchant sought to introduce screenshots of texts between the victim's mother and another man. The victim's mother believed the messages were sent in 2019, and Marchant argued they were sent

in 2021. The State objected to the admission of these screenshots, and the district court excluded them on the grounds of "lack of foundation, lack of completeness" and for "the reasons previously given for excluding during pretrial motions," which included relevance due to remoteness and improper character evidence.

We find it was reasonable for the district court to exclude these text messages. The messages are largely innocuous, containing some flirtatious statements between the victim's mother and the purported paramour, as well as some mild gripes and complaints about Marchant's behavior. Notably, the texts lack any context. The screenshots as submitted are a patchwork of short conversations communicating no common theme or plan of action. And it was well-documented at trial that both parties were distrustful of the other and suspected cheating on both sides. But there is no indication in the screenshotted texts that the victim's mother was conspiring to set Marchant up as he suggests they do. The district court did not abuse its discretion in excluding the screenshots of the text messages between the victim's mother and her paramour.

## V.    Admission of Pornographic Website Bookmarks

Marchant requested in his motion in limine that evidence of bookmarks to stepdaughter-related pornographic videos on his phones be excluded. He contended those bookmarks were irrelevant and inadmissible character evidence. The court denied that request and overruled Marchant's objection when the bookmarks were introduced at trial. Marchant now appeals that ruling, arguing the evidence was inadmissible prior-bad-acts evidence.

Iowa Rule of Evidence 5.404(b) prohibits admission of "[e]vidence of any other crime, wrong, or act" for the purpose of "prov[ing] a person's

character in order to show that on a particular occasion the person acted in accordance with the character." But such evidence can be admissible for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b).

We apply a three-prong test for assessing whether proposed evidence which would otherwise be prohibited under rule 5.404(b)(1) should be permitted under rule 5.404(b)(2).

> The court must first "determine whether the evidence is relevant to a legitimate, disputed factual issue." Second, the evidence must provide "clear proof" that the defendant engaged in the act. Mere speculation or hearsay is not enough, but "[t]estimony of credible witnesses can satisfy the clear-proof requirement." Finally, the court must consider whether the evidence's "probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

*State v. Thoren*, 970 N.W.2d 611, 626 (Iowa 2022) (internal citations omitted).

Marchant contends that the bookmark evidence fails the first and third prongs of this test as it is not relevant to any factual issue besides Marchant's general propensity and its probative value was outweighed by the danger of unfair prejudice. But the evidence was most certainly relevant to identifying the person who had secretly recorded the victim. Marchant denied that he had placed the cameras and claimed to be unaware of the 1,000 nude photos of his girlfriend's teenage daughter on his phone. And our supreme court has previously upheld the admission of bad-acts evidence where the perpetrator's identity was put into question. *See Putman*, 848 N.W.2d at 10. Marchant directly put identity at issue by shifting blame onto the victim's mother and grandmother, as well as onto the victim herself. The bookmark evidence identified a niche category of pornography which Marchant essentially recreated by secretly photographing his girlfriend's daughter.

That evidence assisted in identifying Marchant rather than the victim, her mother, or grandmother as the responsible party.

The evidence was also not more prejudicial than it was probative. Because this balancing test "is not an exact science," we give some deference to the district court's judgment on the issue. *Putman*, 848 N.W.2d at 10 (citation omitted). We assess "the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis." *Id.* at 9–10 (citation omitted).

The probative value was high here. Marchant flatly denied any knowledge of the cameras or the presence of the hundreds of nude images on his phone. Marchant additionally does not deny the bookmarks were his and several of the video titles resemble the type of voyeuristic acts he engaged in ("Stepdad Caught[] Stepdaughter Naked;" "Catching my Step Daughter taking Nudes for her OnlyFans;" "Step-Dad Catches Teen Masturbating and Helps her"). Lastly, the bookmarks were not overly prejudicial. Unlike the jury in *Putman*, which was tasked with viewing child pornography that has "a strong tendency to produce intense disgust," *id.* at 14–15 (citation omitted), the jury here was not presented with pornographic images—merely an itemized list of the bookmark titles. The list was further limited to only those with a stepdaughter connection. While the bookmarks do not present Marchant in a favorable light, they are a far cry from the type of evidence that induces intense disgust. When considered in conjunction with their identity-related purpose, the bookmarks' probative value is not outweighed by the

danger of unfair prejudice. The district court did not abuse its discretion in admitting the bookmarks evidence.

## CONCLUSION

In summary, sufficient evidence supported Marchant's convictions for sexual exploitation of a minor and invasion of privacy. And even if we assume, without deciding, that the district court wrongly excluded evidence of the nude photo under the rape shield law, we determine its exclusion under rule 5.403 was not an abuse of discretion. We further determine that even if we were to decide that the district court erred in overruling Marchant's objection to the admission of the extraction report containing emails, such error was harmless due to the overwhelming evidence of Marchant's guilt. The district court did not abuse its discretion in excluding the screenshots of the text messages between the victim's mother and her paramour. Lastly, the district court did not abuse its discretion in admitting evidence of Marchant's bookmarks to stepdaughter-related pornographic videos.

**AFFIRMED.**